JERSEY CITY REDEVELOPMENT
AUTHORITY, Plaintiff,

v.

PPG INDUSTRIES, et al., Defendants.

Civ. A. No. 85–2014.

United States District Court,
D. New Jersey.

March 17, 1987.

Schwartz, Tobia, & Stanziale, Steven T. Singer, Montclair, N.J., for plaintiff.

Pitney, Hardin, Kipp & Szuch, Gail H. Allyn, Morristown, N.J., for defendant PPG Industries, Inc.

Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, P.C., John P. Beyel, Short Hills, N.J., for defendants Lawrence Const. Co. and Clif Associates.

Tompkins, McGuire & Wachenfeld, Robert J. McGuirl, Newark, N.J., for defendant A. Ambrosio & Sons Contracting, Inc.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Brian M. Levy, Newark, N.J., for defendant International Fidelity Ins. Co.

Purcell, Ries, Shannon & Mulcahey, Michael F. O'Neill, Pluckemin, N.J., for defendant The Hartford.

## OPINION

SAROKIN, District Judge.

In this action concerning the financial responsibility for the cleanup of a contaminated site, defendants PPG Industries, A. Ambrosio & Sons Contracting, Inc., and Clif Associates and Lawrence Construction Co. move for partial summary judgment.

## BACKGROUND

The parties stipulated to the following facts in the final pretrial order filed January 6, 1987. Paragraph references are to that order.

From 1954 through 1964, defendant PPG Industries, Inc., (PPG) owned and operated a plant which processed chromium ore, located on Garfield Avenue in Jersey City, NJ. (¶ 8) The processing produced residue mud consisting primarily of a silica and iron oxide matrix, and containing amounts of aluminum, magnesium, and chromium. (¶ 12) From 1954 to 1963, various contractors, including defendant Lawrence Construction Co. (Lawrence), removed waste mud from the facility for use as fill in construction projects. (¶ 15)

On July 13, 1964, defendant Clif Associates (Clif) contracted to purchase the Garfield Avenue site from PPG. (¶ 24) On the same date, Lawrence and PPG entered into a contract whereby Lawrence guaranteed Clif's performance under the real estate agreement. (¶ 31) At that time, Clif and Lawrence were aware of the potential presence of chemicals in containers on the subject premises. (¶ 24)

On November 25, 1974, plaintiff Jersey City Redevelopment Authority (JCRA) hired defendant A. Ambrosio & Sons Contracting, Inc. (Ambrosio) to perform excavating work on a site at Ninth Avenue in Jersey City. (¶ 38, 40) On the same date, defendant International Fidelity Insurance Co. (International) issued a performance and payment bond guaranteeing Ambrosio's performance in favor of JCRA. (¶ 51) Ambrosio also obtained liability insurance from defendant The Hartford naming JCRA as an insured party.

During 1975, Ambrosio completed performance under its contract with JCRA. Most of the fill material used in completing the Ninth Street demolition was obtained from excavation of a nearby sewer project. (¶ 58) Ambrosio alleges that it purchased from Lawrence approximately nine truck loads of fill material from the Garfield Avenue facility for use at the Ninth Street site. (¶ 59–61)

In 1983, the New Jersey Department of Environmental Protection notified JCRA that some of the landfill used by Ambrosio was contaminated with chromium. (¶ 75) JCRA complied with the Department's cleanup order, with excavation and cleanup work being performed from December 27, 1983 to January 17, 1984. (¶ 94)

On April 25, 1985, JCRA filed a complaint against PPG, Clif, Lawrence, Ambrosio, International, and The Hartford. The complaint seeks relief from defendants PPG, Clif, Lawrence, and Ambrosio on the following bases: Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a) (Count One); the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10–23.11 et seq. (Count Two); abnormally dangerous and ultrahazardous activity (Count Three); trespass (Count Four); public nuisance (Count Five); private nuisance (Count Six); negligence (Count Seven). Additionally, JCRA seeks relief from Ambrosio for breach of contract (Count Eight), misrepresentation (Count Nine), and fraud (Count Ten). Finally, JCRA seeks relief from International and Hartford as the guarantors of Ambrosio's performance (Count Eleven), and under the New Jersey Spill Compensation and Control Act (Count Twelve).

PPG now moves for summary judgment as to Counts One, Two, Four, Five, and Six. Clif and Lawrence now move for summary judgment as to Counts One, Two, Five, and Six. Ambrosio moves for summary judgment as to Count Two and Count Five. Furthermore, PPG, Lawrence, and Clif move for summary judgment on plaintiff's request for punitive damages as to Counts Three through Seven. Finally, Lawrence, Clif, and Ambrosio move for summary judgment as to plaintiff's request for attorney's fees as to Counts Two through Seven.

## DISCUSSION

### I. *Count One—CERCLA*

#### A. PPG

PPG, the original owner of the Garfield Ave. facility and the generator of the waste, contends that plaintiff's CERCLA

claim against it fails as a matter of law because PPG is not a "covered person" within the meaning of the statute.

Section 107(a), 42 U.S.C. § 9607(a), subjects four groups of individuals to liability. Plaintiff alleges that PPG is a "covered person" under § 107(a)(3),[1] which holds liable

> any person who by contract, agreement, or otherwise *arranged for disposal or treatment,* or arranged with a transporter for transport for disposal or treatment, *of hazardous substances owned or possessed by such person,* by any other party or entity, *at any facility owned or operated by another party or entity and containing such hazardous substances.* (Emphasis supplied)

Plaintiff contends that PPG, by selling the Garfield Avenue property to Clif, "arranged for" the disposal of the contaminated waste mud remaining on the site. Memorandum of Law on Behalf of Plaintiff JCRA, at 21. Plaintiff conceded at argument that the PPG-Clif contract does not refer to disposal of waste. Plaintiff maintains, however, that the contract implicitly transfers PPG's obligation to dispose of the waste to Clif. Because mud was removed from the Garfield Avenue property while PPG owned it from 1954–1963, plaintiff submits, "it was clearly foreseeable that waste mud remaining at the Garfield Avenue site after its transfer to Clif Associates would continue to be put to that use." *Id.* at 21.

█ Plaintiff's interpretation of Section 107(a)(3) is unconvincing. Case law interpreting Section 107(a)(3) holds that the responsible party must affirmatively act to dispose of the waste itself—liability under the provision ends with the party who "made the crucial decision" how the hazardous substances would be disposed of or treated. *United States v. A & F Materials Co.,* 582 F.Supp. 842, 845 (S.D.Ill.1984); *see Allied Towing v. Great Eastern Petrole-*

*um Corp.,* 642 F.Supp. 1339, 1350 (E.D.Va. 1986). Section 107(a)(3) requires that, in some manner, the defendant "dumped" his waste on the site at issue. *See United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 190 (W.D.Mo.1985); *United States v. Wade,* 577 F.Supp. 1326, 1333 (E.D.Pa.1983). PPG, by conveying the entire property to Clif in 1964 while foreseeing that waste mud might be sold as landfill by the future owner, did not "arrange for" the disposal of that mud onto the Ninth Avenue site in 1974. Clif contracted independently with Ambrosio to remove the mud from the Garfield Avenue facility. *See United States v. Westinghouse Elec. Corp.,* 14 Envtl.L.Rep. (Envtl.L.Inst.) 20,483, 20,484 (S.D.Ind.1983).

Plaintiff mistakenly relies on case law prohibiting a person from avoiding Section 107(a)(3) coverage by characterizing the arrangement for disposal as a "sale" of the hazardous substances. *See, e.g., United States v. Ward,* 618 F.Supp. 884, 893–94 (E.D.N.C.1985); *United States v. A & F Materials Co.,* 582 F.Supp. 842, 845 (S.D. Ill.1984). In those cases, the defendant engaged in a specific transaction concerning the hazardous substance. In contrast, PPG did not specifically transact with regard to the waste mud. Of course, PPG, in conveying the entire property to Clif, also sold whatever waste existed on the Garfield Ave. site at that time. Such a sale, though, did not constitute an "arrangement" to dispose of the waste according to the 1974 Ambrosio-Lawrence/Clif agreement.

The court reaches this conclusion reluctantly. PPG plainly would be liable under CERCLA if the responsibility for cleanup of the Garfield Avenue site were being determined. The fortuity that Clif transferred the waste to Ninth Street immunizes PPG, the generator, from CERCLA liability. The court, though uncertain as to the wisdom of this as a matter of federal envi-

---

**1.** Plaintiff, in its brief, suggests that PPG is also liable under Section 107(a)(2), which holds responsible "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." This argument fails, because at the time of the disposal in 1974, PPG was not an owner or operator of the Ninth Street site. Furthermore, plaintiff does not (and could not) seek recovery of response costs in connection with PPG's "disposal" of waste at the Garfield Ave. site.

ronmental policy, is compelled to abide by the language of the statute.

The court concludes that PPG did not contract, agree, or otherwise arrange for the disposal of waste mud from the Garfield Ave. facility to the Ninth Street site. PPG, therefore, is not a "covered person" under Section 107(a)(3). The court grants PPG's motion for summary judgment as to Count One of plaintiff's complaint.

### B. *Lawrence Construction/Clif Associates*

■ Lawrence/Clif contends that plaintiff's CERCLA § 107 claim against it fails as a matter of law. Lawrence/Clif argue first that it is not a "covered person" within the meaning of § 107(a). Second, Lawrence/Clif argues that it is entitled, as a matter of law, to the affirmative defense offered by § 107(b)(3).

Initially, the court finds that, construing the facts most favorably for the plaintiff, Lawrence/Clif is a covered person within the meaning of § 107(a)(3). The elements of this section are satisfied—Lawrence/Clif contracted with Ambrosio for the disposal of hazardous substances owned by Lawrence/Clif[2] at a facility owned by JCRA. Lawrence/Clif contends that the sale of fill, without knowledge that it was hazardous, does not constitute an arrangement for disposal of a hazardous substance. This contention fails for two reasons. First, as a matter of fact, a triable issue exists as to whether Lawrence/Clif had actual or imputed knowledge of the hazardous nature of the waste before the Ambrosio contract in 1974. *See infra* pp. 1261-62. Second, as a matter of law, defendant's lack of knowledge, though perhaps the basis for an affirmative defense, cannot remove defendant from the coverage of § 107(a)(3). For purposes of this motion, then, the court considers Lawrence/Clif to be a covered person under § 107(a)(3).

■ Lawrence/Clif principally argues that it is an "innocent landowner" and thus not liable under Section 107. In terms of CERCLA, defendant's argument is by way of the affirmative defense offered in § 107(b)(3), 42 U.S.C. § 9607(b)(3), which reads in relevant part:

There shall be no liability under [section 107(a)] for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by— ... (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant....[3]

Lawrence/Clif argues that the acts of Ambrosio and plaintiff JCRA solely caused the placement of hazardous substances on the Ninth Street site. The statute ostensibly precludes this argument, however, because Ambrosio is an "agent ... whose act or omission occurs in connection with a contractual relationship .. with [Lawrence/Clif]" and therefore not an acceptable third party under § 107(b)(3). Lawrence/Clif counters that the recently added statutory definition of "contractual relationship" permits it to employ the defense.

The term "contractual relationship," for the purpose of section 107(b)(3), includes, but is not limited to, land contracts, ... unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and ... (i) [a]t the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened re-

---

2. Lawrence/Clif argues that it is not an "owner" of hazardous waste within the meaning of § 101(20)(B). The relevant statutory definition, however, is § 101(20)(A)—"'owner or operator' means ... (ii) in the case of an onshore facility ..., any person owning or operating such facility." Lawrence/Clif satisfies this definition.

3. Lawrence/Clif, to prevail on its § 107(b)(3) defense, must also demonstrate that it exercised due care with respect to the hazardous substance and that it took precautions against the foreseeable consequences of Ambrosio's action.

lease was disposed of on, in, or at the facility.

42 U.S.C. § 101(35)(A)(i) (as added by the Superfund Amendment and Reauthorization Act of 1986, Pub.L. 99–499, 100 Stat. 1613, 1616 (1986).

■ Without deciding whether the effective date of the amendments permits their application to this case, and without deciding whether the statutory language applies to these facts,[4] the court recognizes that a triable issue exists as to whether Lawrence/Clif knew or had reason to know that the Garfield Avenue fill was contaminated. Lawrence proffers the deposition testimony of an employee involved in the 1964 purchase of the Garfield Ave. site, who states that PPG never advised her that the fill posed a health hazard. The employee testified that if the environmental hazard had been known, Lawrence/Clif would not have purchased the property. Plaintiff and defendant PPG present evidence indicating that Lawrence/Clif knew of the presence of chromium in the fill at the time of purchase and prior to the Ambrosio contract. Lawrence counters that none of this evidence indicates that it knew that chromium was hazardous. In light of these contentions, a triable issue exists with regard to whether Lawrence/Clif had the requisite lack of knowledge to make use of the affirmative defense offered by § 107(b)(3).

The court denies Lawrence/Clif's motion for summary judgment as to Count One of plaintiff's complaint.

## II. *Count Two—New Jersey Spill Act*

Before initiating this lawsuit, plaintiff sought damages from the New Jersey Spill Compensation Fund under N.J.S.A.

§ 58:10–23.11g. On January 8, 1986, the fund administrator denied the claim because plaintiff's damages occurred prior to April 1, 1977, the effective date of the New Jersey Spill Compensation and Control Act.

■ Plaintiff, in Count Two of its complaint, seeks damages under other provisions of the New Jersey Spill Act.[5] Defendants PPG, Lawrence/Clif, and Ambrosio argue that the Spill Act does not provide a private action for recovery of response costs and other damages.

Plaintiff's statutory argument is as follows. Plaintiff claims that it was authorized to remove the hazardous substances from the Ninth Street site by Section 7(a) of the Spill Act, N.J.S.A. § 58:10–23.11f, which reads in part:

Nothing in this section is intended to preclude removal and cleanup operations by any person threatened by such discharges, provided such persons coordinate and obtain approval for such actions with ongoing State or federal operations.

Plaintiff next turns to Section 8(c) of the Act, N.J.S.A. § 58:10–23.11g, which reads:

Any person who has discharged a hazardous substance or is in any way responsible for any hazardous substance which the department has removed or is removing pursuant to subsection b. of section 7 of this act shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs.

Plaintiff claims that this provision authorizes its suit against defendants to recover its "cleanup and removal costs."

Plaintiff's statutory interpretation is erroneous. First, plaintiff selectively reads

---

**4.** Lawrence/Clif admits that the language of this provision refers to contamination of the landowner's property (in this case, the Garfield Avenue site), not the property of another (the Ninth Street site). However, Lawrence argues that the policy behind the amendment extends to the case at hand. The court need not decide this question for purposes of this motion.

**5.** The complaint, at ¶ 37, also refers to the Environmental Rights Act (ERA), N.J.S.A. § 2A:35A–4. The moving defendants argue at length that the ERA does not provide an independent cause

of action for damages. However, plaintiff, in its brief in opposition, makes plain that its state statutory claim relies directly on the Spill Act. *See* Memorandum of Law and Appendix on Behalf of Plaintiff JCRA, at 34. At argument, plaintiff's counsel reiterated that it was claiming directly under the Spill Act, "buttressed by" the ERA. Therefore, the court need not address whether the ERA provides plaintiff with an independent remedy, or whether plaintiff has complied with the notice requirement of the ERA.

Section 7. That section principally authorizes the New Jersey Department of Environmental Protection to engage in actions for cleanup and removal of hazardous substances. Additionally, as plaintiff points out, the section does not preclude such actions by private entities; however, the statutory language does not empower these entities to act, as it does with the department.

Plaintiff's reading of Section 8(c) is more troublesome. Properly understood, this section allows the Fund to recover response costs from responsible parties, after the Fund has reimbursed DEP for the cleanup costs incurred.[6] The language of Section 8(c)—referring to responsibility for hazardous substances "which the department has removed or is removing pursuant to [Section 7(b)]"—reveals no intent to provide for an individual to seek recovery of response costs against other private parties.

Plaintiff, in essence, strains to find a Spill Act analogy to Section 107 of CERCLA. The New Jersey legislature, if it had desired to create such a remedy, could easily have incorporated into the Act a provision similar to Section 107.

The court concludes that plaintiff, as a matter of law, has not stated a cause of action under the New Jersey Spill Act. Therefore, the court grants the motions for summary judgment of defendants PPG, Lawrence/Clif, and Ambrosio as to Count Two of the complaint.

### III. *Count Four—Trespass*

In Count Four of the complaint, plaintiff alleges that defendants trespassed and caused others to trespass for the purpose of depositing hazardous waste on plaintiff's property. ¶ 42. Defendant PPG, the former owner of the Garfield Avenue site and the waste generator, contends that, as to PPG, this claim fails as a matter of law.

Plaintiff does not allege that PPG directly trespassed upon the Ninth Street site. First, plaintiff argues that PPG is liable in trespass for its sale of the Garfield Ave. facility to Clif. Second, plaintiff maintains that PPG is liable in trespass for its generation of the wastes.

■ First, plaintiff submits that PPG knew, when it sold to Clif, that Garfield Ave. waste materials were being used as fill and thus, "that a trespass was likely." Memorandum of Law in Opposition on Behalf of Plaintiff JCRA, at 38. This argument fails. PPG did not arrange directly for the entry of waste onto the Ninth Street site. Furthermore, PPG is not responsible in trespass for the entry by Ambrosio, the excavating contractor. Under New Jersey law, PPG may be liable for trespass committed by another only if that party is employed, paid, or controlled by PPG. *See Starego v. Soboliski*, 11 N.J. 29, 34, 93 A.2d 169 (1952). PPG, who sold the Garfield Avenue site ten years before Clif contracted with Ambrosio, has no such connection to the alleged primary trespasser.

Plaintiff mistakenly relies on Section 427B of the Restatement (Second) of Torts, which provides:

> One who employs an independent contractor to do work which the employer knows or has reason to know to be likely to involve a trespass upon the land of another ..., is subject to liability for harm resulting to others from such trespass....

*See City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1151–52 (E.D. Pa.1982) (applying this section to a defendant who contracted directly with a party who the defendant had reason to know would trespass on plaintiff's property). PPG has not employed Ambrosio, Clif, or Lawrence as an independent contractor. PPG, even if it conveyed its property to Clif with the alleged knowledge that Clif would contract for the disposal of contaminated landfill therefrom, cannot be held responsible for the trespass of a party with whom Clif contracted ten years later.

---

6. The statutory scheme authorizes DEP to perform removal and cleanup and then seek reimbursement from the Fund. The Fund, under Section 8(c), then seeks to collect from responsible parties.

Second, plaintiff maintained at oral argument that PPG's generation of hazardous waste on the Garfield Ave. site is an activity for which PPG can be sued in trespass. Plaintiff contends that the generation was either an abnormally dangerous or a negligent activity that caused waste to enter plaintiff's land. Plaintiff argues that an intentional invasion is not a necessary element of trespass.

Commentators, while recognizing that liability may be imposed in such a situation, split as to whether trespass is an appropriate theory for recovery. A leading authority states:

> The intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred. The distinction to be made is between accidental and intentional entries. Accidental entries are often actionable when produced negligently or as a consequence of abnormally dangerous activities but not as trespasses.

W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts*, § 13 at 73 (5th ed. 1984). On the other hand, the Restatement, in its chapter on trespass to land, provides:

> One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if ... the presence of the thing ... upon the land causes harm to the land [or] the possessor....

Restatement (Second) of Torts, § 165 (1964).

The New Jersey Supreme Court has not ruled on this issue—this court, of course, must predict how the Supreme Court would decide this question. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). At least one New Jersey court adopts the Prosser

view that trespass is an inappropriate theory of liability in these situations. That court dismissed a trespass claim against a waste generator, reasoning that it was more appropriate to employ newly developed absolute liability theories than "to endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned." *See Kenney v. Scientific, Inc.*, 204 N.J.Super. 228, 256, 497 A.2d 1310 (Law Div.1985).

This court concurs. Plaintiff's trespass claim founded in negligence or absolute liability is no more than a repackaged version of plaintiff's direct negligence (Count Seven) and absolute liability (Count Three) claims. Plaintiff does not seek any remedy under trespass that is unavailable under the other counts.[7]

The court concludes that, as a matter of law, plaintiff cannot prevail on its trespass claim against PPG. Therefore, the court grants PPG's motion for summary judgment as to Count Four of the complaint.

## IV.  *Count Six—Private Nuisance*

In Count Six, plaintiff alleges that defendants PPG, Lawrence/Clif, and Ambrosio are liable for a private nuisance. Specifically, plaintiff alleges that the "generation, transportation, and disposal of hazardous wastes" by the defendants, ¶ 50, has unreasonably interfered with plaintiff's use of the Ninth Street property, ¶ 51. PPG, the prior owner of the Garfield Ave facility and the waste generator, and Lawrence/Clif, the current owner and the party who sold the contaminated mud for fill, contend that plaintiff's private nuisance claim fails as a matter of law.

### A.  PPG

█ In New Jersey, a private nuisance consists of an invasion of one's interest in the private use and enjoyment of land. *See Birchwood Lakes Colony Club v. Borough*

7. In some situations, damages will be available in trespass that are not recoverable in direct negligence or absolute liability actions. See Restatement (Second) of Torts, § 165 comment e (1964) (stating that any damage actually caused by a trespass to land, even if wholly unforeseeable, may be recovered). All damages sought by plaintiff in this matter are recoverable under the nontrespass counts.

*of Medford Lakes*, 90 N.J. 582, 591–92, 449 A.2d 472 (1982). Such an invasion can be intentional or caused by negligent or reckless conduct, or an abnormally dangerous activity. *See id.* at 592 (adopting Restatement (Second) of Torts § 822 (1979)).

■ Plaintiff has raised a triable nuisance claim under this definition. The invasion complained of is the disposal of waste mud from the Garfield Ave. facility onto the Ninth Street cite. Plaintiff claims that PPG's generation of waste mud during 1954–63 constitutes either negligent or reckless conduct, or an abnormally dangerous activity that caused the invasion. That plaintiff has raised a triable issue on these claims is demonstrated by PPG's failure to move for summary judgment on plaintiff's direct negligence count (Count 7) or abnormally dangerous activity count (Count 3).

As explained with regard to plaintiff's trespass claim against PPG, the court has reservations about permitting a cause of action that merely reiterates plaintiff's negligence and strict liability claims. Cf. W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts*, § 87 at 624 (5th ed. 1984) ("[I]t seems highly desirable to limit nuisance to intentional interferences if confusion is to be avoided."). Nonetheless, this court is bound to follow the law as expressed by the New Jersey Supreme Court.

The court denies PPG's motion for summary judgment as to Count Six of the Complaint.

### B. *Lawrence/Clif*

Plaintiff contends that Lawrence/Clif is responsible for the nuisance created by Ambrosio, Lawrence/Clif's contractual partner. Lawrence/Clif responds that it cannot be held liable because it is an "innocent landowner." *See State v. Exxon Corp.*, 151 N.J.Super. 464, 376 A.2d 1339 (Chancery Div.1977).

The court rejects this argument for two reasons. First, plaintiff has raised a triable issue as to Lawrence/Clif's knowledge of the hazardous nature of the waste mud. Second, Lawrence/Clif is in a different position than ICI, the "innocent landowner"

in *Exxon*. In *Exxon*, ICI's only "activity" was the ownership of contaminated property which caused the nuisance. In this case, Lawrence/Clif has done more than simply own the Garfield Ave. facility. Accepting plaintiff's allegations, Lawrence/Clif contracted, with knowledge, for the disposal of contaminated landfill.

The court denies Lawrence/Clif's motion as to Count Six of the complaint.

### V. *Count Five—Public Nuisance*

In Count Five, plaintiff alleges that the above-identified activities of defendants constituted a public nuisance.

■ In New Jersey, a public nuisance consists of an unreasonable interference with the exercise of a right common to the general public. See *Mayor of Alpine Borough v. Brewster*, 7 N.J. 42, 50, 8 A.2d 297 (1951); *see also* Restatement (Second) of Torts § 821(B)(1) (1979). No defendant contends that the use of contaminated landfill at the Ninth Street site is not a public nuisance. However, plaintiff has standing to sue on this theory only if it has sustained "special damage over and above that suffered by the general public." *Township of Howell v. Waste Disposal, Inc.*, 207 N.J.Super. 80, 99, 504 A.2d 19 (App.Div. 1986). Defendants contend that plaintiff has not suffered the requisite special injury to confer standing to sue for relief from a public nuisance.

Plaintiff responds that it has suffered special damages in two respects—it was precluded from use and development of its property, and it incurred pecuniary loss in complying with the DEP order. The Third Circuit has made clear recently, however, that special pecuniary injury does not confer standing upon an individual to sue for public nuisance. *See Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303, 315–16 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 384, 88 L.Ed.2d 337 (1986). On facts nearly identical to these, the Court of Appeals held that harm to private property rights was not damage suffered in the exercise of a right common to the general public—in this case, the right to an

uncontaminated environment. This court is bound by this interpretation of the common law of public nuisance and thus must conclude that plaintiff lacks standing to seek redress on this ground.[8]

The court grants the motions of PPG, Lawrence/Clif and Ambrosio for summary judgment as to Count Five of the complaint.

### VI. *Counts Three-Seven—Punitive Damages*

■ Plaintiff seeks punitive damages, among other relief, in Counts Three through Seven. Defendants Lawrence/Clif and PPG[9] argue that as a matter of law plaintiff cannot recover punitive damages.

The New Jersey Supreme Court has recently reiterated the requirements for recovery of punitive damages.

To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49, 477 A.2d 1224 (1984); *see Enright v. Lubow*, 202 N.J.Super. 58, 76, 493 A.2d 1288 (App.Div.1985).

Plaintiff has raised a triable issue as to defendants' intent. Accepting plaintiff's version of the facts, PPG, when it conveyed to Clif, knew of the presence of chromium in the waste mud, and either knew or was reckless in not knowing that this was a hazard. Similarly, Lawrence/Clif, when it sold fill to Ambrosio, knew of the presence of chromium in the fill, and either knew or was reckless in not knowing that this was a hazard.

Defendants' motion for summary judgment on punitive damages is denied.

### VII. *Counts Two-Seven—Attorney's fees*

In Counts Two through Seven, plaintiff seeks attorney's fees, among other relief. Defendants Lawrence/Clif and Ambrosio contend that as a matter of law plaintiff may not recover attorney's fees under any of these counts.

As to Count 2, plaintiff's New Jersey Spill Compensation and Control Act claim, the court's granting of defendants' motions for summary judgment renders moot the propriety of plaintiff's attorney's fees request.

As to Counts 3–7, all common law tort claims, the court grants defendants' motions. The longstanding "American rule" is that each party must bear their own legal costs, subject to certain judicially developed exceptions. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986). Plaintiff makes no argument that any of the exceptions to the rule apply in this matter.

The court grants defendants' motions for summary judgment as to plaintiff's requests for attorney's fees in Counts 3–7.

### CONCLUSION

The court's rulings on the motions for partial summary judgment by PPG, Lawrence/Clif, and Ambrosio are as follows:

As to Count One (CERCLA), the court grants PPG's motion and denies Lawrence/Clif's motion.

---

8. The *Hercules* court, applying Pennsylvania common law, relied on Restatement (Second) of Torts § 821C(1)(1979), which provides:

In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public *exercising the right common to the general public that was the subject of the interference* (emphasis supplied).

The court believes that this expression of the law of public nuisance, as interpreted by the Third Circuit, reflects current New Jersey law as well. Therefore, this court is bound by the Third Circuit's holding.

9. PPG's moving papers and briefs do not address this issue. However, PPG does join in Lawrence/Clif's motion for summary judgment on this issue. *See* Brief and Appendix on Behalf of PPG Industries, Inc. in Opposition to Motion for Partial Summary Judgment by Defendants Clif Associates and Lawrence Construction Co., at 18.

As to Count Two (New Jersey Spill Act), the court grants the motions of PPG, Lawrence/Clif, and Ambrosio. Count Two, therefore, is dismissed.

As to Count Three (ultrahazardous activity), the court denies the motions of PPG and Lawrence/Clif as to punitive damages, and grants the motion of Lawrence/Clif and Ambrosio as to attorney's fees.

As to Count Four (trespass), the court grants PPG's motion for summary judgment, denies Lawrence/Clif's motion as to punitive damages, and grants the motions of Lawrence/Clif and Ambrosio as to attorney's fees.

As to Count Five (public nuisance), the court grants the motions of defendants PPG, Lawrence/Clif, and Ambrosio for summary judgment. Count Five, therefore, is dismissed.

As to Count Six (private nuisance), the court denies PPG's motion for summary judgment, denies Lawrence/Clif's motion for summary judgment, denies Lawrence/Clif's motion as to punitive damages, and grants the motions of Lawrence/Clif and Ambrosio as to attorney's fees.

As to Count Seven (negligence), the court denies the motions of PPG and Lawrence/Clif as to punitive damages, and grants the motions of Lawrence/Clif and Ambrosio as to attorney's fees.