## C. GREENE EQUIPMENT CORPORATION, Plaintiff,

v.

## ELECTRON CORPORATION, Defendant.

### No. 87 C 4695.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1988.

---

Jeffrey Segull, Robert M. Fritzshall, Matthew F. Zubek, Steven Fritzshall, Fritzshall & Gleason, Chicago, Ill., for plaintiff.

Mark Crane; Thomas W. Kivlahan, Hopkins & Sutter, Chicago, Ill., J. Kemper Will, Robert F. Hill, Karen A. Tomb, Hill & Robbins, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff C. Greene Equipment Corporation brings this three count complaint against the defendant Electron Corporation pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9656 ("CERCLA") and two pendent state law claims. Greene alleges that it unknowingly purchased machinery that was leaking Polychlorinated Biphenyls ("PCBs") from Electron. The leaking machinery contaminated Greene's facility. Greene was forced to incur clean-up costs after the Environmental Protection Agency brought a successful administrative action against it under the Toxic Substances Control Act, 15 U.S.C. §§ 2601–2629. Greene alleges that Electron should bear financial responsibility for the clean-up costs. Electron moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Electron's motion is granted for the following reasons.

# I

## Rule 56 Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate when the moving party uses the

> pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, [to] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). A material fact is one that "must be outcome-determinative under the applicable law." *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (substantive law determines material facts); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). A genuine dispute about a material fact arises when "the evidence is such that a reasonable jury could return a verdict for that party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

After the movant has made a properly supported summary judgment motion, "the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial." *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir. 1986); *See also Matushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986) (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.") The nonmovant *may not* rely on the allegations or denials in its pleadings to establish a genuine issue of fact. *See* Fed. R.Civ.P. 56(e). Furthermore, summary judgment *must* be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, "the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses." *Valentine v. Joliet Township High School District*, 802 F.2d 981, 986 (7th Cir.1986) (emphasis added).

# II

## Factual Background

The undisputed facts are as follows. Electron purchased the transformer, capacitors, reactors and the other equipment which is the subject matter in this case for its own use at an auction in Michigan during 1974. D. Schaller Affidavit, ¶ 4. The equipment arrived at Electron's Blackwell, Oklahoma facility in late 1974. *Id.* Electron purchased the equipment to use as spares but never in fact used the equipment because the voltage on the transformer was wrong. R. Wagnon Affidavit, ¶¶ 3, 4. PCB oil was contained within the equipment from the time of its manufacture. *Id.* at ¶ 5. Electron decided to sell the equipment in 1980 to make more space available for the expansion of the Blackwell Facility. D. Schaller Affidavit, ¶ 6. At the time of the sale, Electron employees inspected the equipment and found it to be "totally enclosed, intact and non-leaking." B. Wagnon Affidavit, ¶ 7. Moreover, the equipment was in a "usable condition." D. Schaller Affidavit, ¶ 9.

Electron approached Greene when it was trying to sell the equipment because an Electron employee was aware that Greene had purchased complementary equipment at the same Michigan auction. D. Schaller Affidavit, ¶ 7. Greene was a broker for used electrical equipment. E. Greene Affidavit, ¶ 5. Greene purchased the equipment for resale to others. Electron Request for Admission, Response 9. Prior to this sale, Greene had rarely dealt with equipment which contained PCBs. E. Greene Affidavit, ¶ 4. On October 29, 1981, the parties entered into an agreement for the sale of the equipment. *Id.* at ¶ 3; J. McElroy, ¶ 2. The agreement states that portions of the equipment contain PCBs

and that the handling and disposal of PCBs is governed by federal law. Electron sold the equipment for $1,000 although the estimated value of new equipment of this type was over $100,000 in 1981. E. Greene Affidavit, ¶¶ 8, 9. The equipment was sold "as is, where is." D. Schaller Affidavit, ¶ 7; E. Greene Affidavit, Exhibit A; Electron Request for Admission, Response 8.

In October 1981, the equipment was transported from Electron's Blackwell facility by the Wickerson Crane Company. R. Wagnon Affidavit, ¶ 6. Electron had no role in arranging for the transportation of the equipment. *Id.* The equipment arrived in Greene's Melrose Park facility during that same month. E. Greene Affidavit, ¶ 6. Greene conducted its first inspection of the equipment when it arrived at Greene's Melrose Park facility in November 1981. Electron Request for Admissions, Response 15. Greene first became aware that the equipment was leaking PCBs in May 1984. *Id.* at Response 17.

## III

### CERCLA

■ Greene alleges that Electron is liable for arranging for the transportation and disposal of hazardous substances under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). To establish liability under this provision, Greene must prove that,

(1) the defendant was a person within the meaning of the statute; (2) he owned or possessed hazardous substances; (3) he, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of those substances at a facility; (4) there was a release or threatened release of a hazardous substance at the site; (5) the release

or threatened release caused the incurrence of response costs. *United States v. Ward*, 618 F.Supp. 884, 893–94 (E.D.N.C.1985). Electron advances several arguments in support of its summary judgment motion. The court will focus on just one of the arguments as it is dispositive of this motion.

Electron asserts that Greene has presented insufficient evidence to establish that Electron is a responsible party under § 9607(a)(3) by arranging for the disposal of a hazardous substance. First, Electron argues that its sale of the equipment was legal under the applicable laws.[1] Electron purchased the equipment for its own use prior to the pertinent date. Electron also presents facts which establish that the equipment was totally enclosed and non-leaking when it was sold. *See supra*, at 985.

Greene attempts to rebut Electron's facts in several interesting but unavailing ways. First, Greene attempts to denigrate the equipment by characterizing it as a "PCB leaking transformer, which turned out to be no more than fully depreciated scrap loaded with hazardous substance...." In addition, Greene's general manager Earl Greene stated that he "did not know at the time of the sale that this machinery was leaking or that it was in such a dilapidated condition that leakage was imminent." Neither Greene's characterization of the equipment nor its general manager's statement as to what he *did not* know are sufficient to rebut the undisputed facts which establish that the equipment was non-leaking, totally enclosed, and usable when it was sold.[2]

Finally, Greene identifies the following facts that, when considered together, purportedly compel the inference that the equipment was leaking when it was sold. First, Electron did not use the equipment

---

**1.** PCBs are regulated by the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601–2629 and its accompanying regulations. The applicable regulation is found at 40 C.F.R. § 761.20(c)(1). The regulation states that

PCBs at concentrations of 50 ppm or greater, of PCB Items with PCB concentrations of 50 ppm or greater, sold before July 1, 1979 for

purposes other than resale may be distributed in commerce only in a totally enclosed manner after that date.

**2.** The court finds it particularly telling that Greene's own inspection after the equipment arrived at its facility in 1981 disclosed *no* evidence that the equipment was leaking.

between 1974 and 1981. Second, the EPA required the inspection of such equipment for the first time in 1981. Third, Electron sold the equipment for $1,000 when the price of new equipment in 1981 would have been over $100,000. These facts offer little, if any, probative value on the question of Electron's motivation for making the sale. Electron has introduced evidence stating that it did not use this equipment because it was not compatible with its other equipment. In addition, there is no evidence as to the equipment's *original* value. Consequently, the court cannot draw any justifiable inferences from Electron's sale price. The equipment was at least seven years old and had had at least one previous owner at the time of sale. Based on the state of the record, it is impossible to know whether Electron's price was so suspiciously low as to support an inference that the equipment was leaking PCBs or otherwise defective.

While one might conceivably infer from the facts in the record that the equipment was leaking when it was sold, such an inference would be neither justifiable nor reasonable. Accordingly, the court will not draw such an inference. *See Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987) ("we draw only reasonable inferences, not every conceivable inference."). Consequently, Greene has failed to present enough concrete facts to allow a reasonable jury to directly find or reasonably infer that the equipment was leaking when it was sold. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ The fact that the equipment was totally enclosed, non-leaking, and usable when it was sold also weakens Greene's argument that Electron was disposing of a hazardous substance in violation of CERCLA. Under CERCLA, "disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste into or on any land" such that the waste may enter the environment.

42 U.S.C. § 9601(29), (incorporating by reference 42 U.S.C. § 6903(3)). To be liable under § 9607(a)(3), the defendant must affirmatively act to dispose of the waste in some manner by "dumping" the waste on the site in issue. *Jersey City Redevelopment Authority v. PPG Industries*, 655 F.Supp. 1257, 1260 (D.N.J.1987) (and cases cited within). As established above, the hazardous waste was totally enclosed in the equipment when Electron sold it. In addition, Electron made no contract to transport the equipment to Greene's facility nor did it enter into a specific transaction regarding the hazardous substance. *Cf. Jersey City*, 655 F.Supp. at 1260.

■ The court must also consider "the reason for the transaction in the hazardous substance" when identifying responsible parties under § 9607(a)(3). *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 655 fn. 3 (N.D.Ill.1988) (Aspen, J.). Electron has submitted evidence indicating that it sold the equipment to make space for the expansion of its facility and not for the disposal of its waste. *See, e.g., Id.* at 657. Greene attempts to establish an inference that Electron sold the equipment to dispose of its waste by citing the same facts that it unsuccessfully used to establish an inference that the equipment was leaking. These facts are also insufficient to allow the court to draw a reasonable inference that Electron sold the equipment to dispose of its hazardous waste. Consequently, summary judgment is appropriate because Greene has failed to present any direct evidence or facts supporting a *reasonable* inference that Electron had an inappropriate motive when it sold the equipment. *Id.; see also Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986), *quoting Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985) ("summary judgment is proper 'where the plaintiff presents no indication of motive or intent supportive of his position.'") Accordingly, the court grants Electron's summary judgment motion on Count I of the complaint because Electron is not a "responsible party" as defined by § 9607(a)(3).

## IV

### Pendent State Law Claims

The court will exercise its discretion and relinquish federal jurisdiction of the pendent state law claims in Counts II and III of the complaint because the underlying federal claim against Electron has been dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987). Consequently, the court will deny Electron's motion for summary judgment on Counts II and III.

### Conclusion

For the foregoing reasons, the court grants Electron's motion for summary judgment as to Count I and denies the motion as to Counts II and III. The court relinquishes jurisdiction of the pendent state law claims alleged in Counts II and III.