**ASHLAND OIL, INC., Plaintiff,**

**v.**

**SONFORD PRODUCTS CORPORATION, a Minnesota Corporation, Park Penta Corporation, Bow Chemical Company, Park Metals Processing Co., Inc., Industry Financial Corporation, Sonford Chemical Company, Sonford Products Corporation, A Mississippi Corporation, Sonford International Co., Inc., Chapman Chemical Company, Forestry Enterprises, Inc., Defendants.**

**Civ. No. 3–91–0715.**

United States District Court, D. Minnesota, Third Division.

Jan. 11, 1993.

Mark F. Ten Eyck, Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, for Ashland Oil, Inc.

Robert B. Jaskowiak, Rider, Bennett, Egan & Arundel, Minneapolis, MN, for Sonford Products Corp.

Gregory A. Fontaine, Steven M. Christenson, Dorsey & Whitney, Minneapolis, MN, for Industry Financial Corp.

Steven H. Snyder, Snyder Law Office, Maple Grove, MN, for Sonford Chemical Co., Idacon, Inc.

Gerald L. Svoboda, Gregory T. Spalj, Fabyanske, Svoboda, Westra & Davis, St. Paul, MN, for Chapman Chemical Co.

Ronda P. Bayer, Dean R. Karau, Fredrikson & Byron, Minneapolis, MN, for Indianhead Truck Line, Inc.

## AMENDED MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### INTRODUCTION

This order amends and supersedes this court's prior order dated December 24, 1992.[1]

This matter is before the court upon defendant Industry Financial Corporation's motion for summary judgment and upon plaintiff Ashland Oil, Inc.'s motion for summary judgment. For the following reasons, the court grants the defendant's motion and denies the plaintiff's motion.

### BACKGROUND

For approximately 23 years, plaintiff Ashland Oil, Inc. (Ashland) leased land in St. Paul Park, Minnesota to tenants who manufactured wood preservatives on the site. Industry Financial Corporation's (IFC) predecessor Industry Capital, Inc. loaned money to Sonford Products Corporation (Sonford), one of Ashland's tenants. As collateral for that loan, IFC took a security interest in Sonford's assets, including inventory and equipment.

Sonford filed a petition for bankruptcy in 1982. IFC, as a secured creditor, participated in the bankruptcy proceedings. Attempting to recover the value of its loans to Sonford, IFC agreed to cooperate in a transaction which would effectively transfer Sonford assets to Park Penta Corporation (Park Penta). Under the terms of the transaction, the Sonford bankruptcy trustee abandoned the Sonford assets in March, 1983. Immediately afterward, IFC notified Sonford's creditors that Park Penta intended to acquire Sonford's former assets. In order to facilitate the transfer to Park Penta, IFC foreclosed its security interest in the abandoned assets and briefly held title

---

1. This order makes no substantive changes to the December 24, 1992 order. The principal change is the insertion of the full text of 42 U.S.C. § 9601(20)(A), which provides the statutory definition of "owner or operator" as used in the Comprehensive Environmental Response, Compensation and Liability Act.

to the assets in late March or early April 1983.[2]

According to the terms of the workout transaction, Park Penta borrowed $87,000 from IFC as working capital on April 13, 1983. Six days later, on April 19, 1983, IFC sold the former Sonford assets to Park Penta for $98,180. Park Penta financed the purchase with a second loan from IFC. Defendant IFC took a security interest in the assets as collateral for the second loan. One year later, in March 1984, Park Penta filed for bankruptcy. After attempts to find prospective buyers for Park Penta's assets proved fruitless, IFC abandoned its security interest in those assets in August, 1984.

Ashland alleges that during the time that Sonford conducted its operations on the leased property, the property became contaminated with hazardous substances. In November 1991, Ashland brought this action against IFC and several other defendants, seeking to hold them liable for costs of "cleaning up" the property under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), the Minnesota Environmental Response and Liability Act (MERLA) and various state common law theories. Additional facts are discussed below as they become relevant.

**DISCUSSION**

**I. Liability as Owner or Operator**

Initially, Ashland seeks to hold IFC liable for cleanup costs as an "owner or operator," i.e. a "person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2)[3]. The scope of the foregoing definition of "owner or operator" is broad, but not unlimited. CERCLA expressly limits the liability of certain lenders, excluding from owner/operator liability any "person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). IFC contends that it falls within this "safe harbor" and thus is sheltered from CERCLA liability. Ashland disagrees, contending that when IFC took title to Sonford's former assets, IFC became an owner/operator, subject to liability under CERCLA.

Responding to confusion about the scope and applicability of the safe harbor in the financial community and differing interpretations by the circuit courts, the Environmental Protection Agency (EPA) recently promulgated a rule intended to clarify the scope of the lender safe harbor provision. *See Final Rule: ... Lender Liability Under CERCLA*, 57 Fed.Reg. 18,344 et. seq. (codified at 40 C.F.R. § 300.1100).[4] The

2. In its memorandum of law, IFC stated that it was unable to determine the precise date of foreclosure, but that it believed the most likely date of foreclosure was between April 7 and April 19, 1983. Ashland contends the foreclosure took place in March, 1983. For the purpose of this motion, it is irrelevant whether IFC foreclosed in March or in April, 1983. In either case, IFC held title to the property for no longer than one month.

3. CERCLA further defines owner/operator: The term "owner or operator" means (i) in the case of a vessel, any person owning, operating, or chartering by demise, such vessel, (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii) in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State of local government, any person who owned, operated or otherwise controlled activities at such facility immediately before-

hand. Such term does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility. 42 U.S.C. § 9601(20)(A).

4. At argument, Ashland contended the EPA rule was inapplicable to the present case because the rule's effective date was April 29, 1992, after the relevant events occurred and after Ashland filed this action. However, the explanation of the rule in the Federal Register states "EPA expects that the provisions of this regulation will provide appropriate guidance for evaluating the actions of a holder or government entity prior to the effective date of this final rule." 57 Fed.Reg. 18374 (citing *Fertilizer Institute v. United States Environmental Protection Agency*, 935 F.2d 1303, 1308 (D.C.Cir.1991)). This comports with the general rule of administrative law that agency rules apply to cases pending on the effective date of the rule, regardless of the date of

rule exempts lenders from liability as owners or operators if they "maintain[ ] indicia of ownership primarily to protect a security interest." 40 C.F.R. § 300.1100. Included in EPA's definition of "indicia of ownership" is "any legal or equitable title to real or personal property acquired incident to foreclosure and its equivalents." 40 C.F.R. § 300.1100(a). The "safe harbor" provision also requires that a foreclosing lender take steps to sell the property expeditiously, including listing the property for sale within 12 months. *See* 40 C.F.R. §§ 300.-1100(d)(1), (2).

IFC held title to Sonford's former assets, including barrels and equipment which allegedly leaked pollutants, for approximately 3–4 weeks. The record demonstrates that IFC took title for this brief period to facilitate the transfer of the assets to Park Penta and to protect IFC's security interest in the assets. After briefly holding title, IFC transferred the assets to Park Penta, loaned money to Park Penta and took a security interest in the transferred assets to secure the loans. IFC's brief holding of title thus falls squarely within the "indicia of ownership to protect a security interest" safe harbor provided by statute and clarified by EPA's rule. *See* 42 U.S.C. § 9601(20)(A), 40 C.F.R. § 300.1100(a).

■ Ashland also contends that IFC is liable as an owner/operator not only because it held title to the assets, but also because IFC participated in the management of Sonford and Park Penta. A security interest holder is not exempt from CERCLA liability if it participates in the management of the offending facility. 42 U.S.C. § 9601(20)(A). EPA defines participation in management of a facility as:

> actual participation in the management or operational affairs of the ... facility by the holder, [it] does not include the mere capacity to influence, or ability to influence, or the unexercised right to control facility operations.

40 C.F.R. § 300.1100(c)(1). The undisputed evidence shows that IFC did not participate

in the management of either Park Penta or Sonford or exercise any decisionmaking control over environmental compliance decisions. The periodic reviews of the debtors' finances conducted by IFC were insufficient to constitute "participation in management" and thus IFC remains within the boundaries of the lender "safe harbor". *See* 40 C.F.R. § 300.1100(c)(2)(ii) (policing security interest or loan and various "workout" activities, including foreclosure, forbearance and renegotiating security interest terms, do not constitute participation in management for purposes of CERCLA liability).

■ EPA's rule is consistent with the statutory language of CERCLA and the interpretation accorded that language by the majority of leading federal cases which have considered the question of CERCLA lender liability. *See In re Bergsoe Metal Corp.*, 910 F.2d 668 (9th Cir.1990); *United States v. Mirabile*, 15 Envtl.L.Rep. 20,992, 1985 WL 97 (E.D.Pa.1985); *cf. United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990) (dicta suggesting that "capacity to influence" management of debtor's business and waste disposal may be enough to impose CERCLA owner/operator liability on lender). EPA promulgated the rule after careful study and a full notice and comment procedure. Further, EPA's rule is entitled to deference because the President (vested by Congress with implementation authority) has assigned primary responsibility for CERCLA administration to the agency. *See Wagner Seed Co. v. Bush*, 946 F.2d 918 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992). Therefore, the court will follow the EPA rule clarifying the scope of the lender safe harbor.

All of IFC's activities with respect to Sonford and Park Penta fall within the safe harbor, as defined by EPA. Therefore, IFC is not liable as an owner/operator under EPA's authoritative interpretation and application of CERCLA. The court next considers Ashland's claim that IFC is liable

underlying events. Therefore, the court concludes that the EPA's rule, clarifying an existing

statutory exemption, applies to the instant case.

as an "arranger" of disposal of hazardous substances.

## II. Liability as Arranger

■ CERCLA also imposes liability on persons who "arrange[ ] for disposal or treatment ... of hazardous substances owned or possessed by such person[s], by any other party or entity, at any facility owned or operated by another party or entity...." 42 U.S.C. § 9607(a)(3). Ashland contends that IFC "arranged" the disposal of allegedly contaminated materials by foreclosing and gaining title to Sonford's assets and selling them to Park Penta. The court finds this a strained construction and application of the statutory language, with little support in case law.

The language of the statute and most cases interpreting the statute require some affirmative action on the part of the defendant in order for "arranger" liability to attach. *See, e.g., United States v. Northeastern Pharmaceutical & Chemical Co.,* 810 F.2d 726, 743–744 (8th Cir.1986) (imposing liability on corporate officer who personally approved disposal of hazardous substances at remote site—authority to control handling and disposal of hazardous substances is key to liability determination); *United States v. Consolidated Rail Corp.,* 729 F.Supp. 1461, 1469–70 (D.Del. 1990) (CERCLA arranger liability turns on "who made the crucial decision to dispose of hazardous substances"). The court finds no evidence of such affirmative acts or decisions by lender IFC regarding the disposal of hazardous waste on the property leased from Ashland by Sonford and Park Penta.

Several cases with analogous facts have held that the mere sale of property containing hazardous substances is insufficient to impose arranger liability on the seller. In *Jersey City Redevelopment Authority v.*

*PPG Industries,* 655 F.Supp. 1257 (D.N.J. 1987), the defendant actually generated and deposited hazardous substances on a property and later sold the property to a third party. That third party used contaminated soil from the property as "fill" at another site. The court rejected the plaintiff's attempt to impose CERCLA arranger liability on the defendant because the defendant had contracted to convey the entire property to the third party and not specifically the contaminated soil. *Id.,* 655 F.Supp. at 1260. The court held the sale did not constitute "arranging" the disposal of hazardous substances because the defendant did not make a "crucial decision" regarding how to treat or dispose of the substances. *Id.; See also Florida Power & Light Company v. Allis Chalmers Corp.,* 893 F.2d 1313, 1317–19 (11th Cir. 1990) (sale of useful product containing hazardous substances, without additional evidence that transaction includes arrangement for disposal, is insufficient to impose arranger liability).[5]

In the present case, IFC did not make any crucial decisions regarding disposal of hazardous substances or take any other affirmative action regarding disposal. Rather, IFC merely sold the former Sonford assets to Park Penta in order to maintain the value of its security interest. Neither the language of CERCLA nor the cases cited by the parties provide for "arranger" liability in this situation. Therefore, the court finds IFC is not liable for cleanup costs as an arranger under CERCLA.

## III. Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). With respect to the plaintiff's CERCLA claims,

---

**5.** In opposition, Ashland cites cases in which the court imposed CERCLA liability on sellers of property. However, each of those cases involved more active involvement in the disposal by the seller or other aggravating circumstances not present in the instant case. For example, in *Sanford Street Local Dev. Corp. v. Textron, Inc.,* 768 F.Supp 1218 (W.D.Mich.1991), the court found that the sale of a property at a heavy discount, allegedly reflecting the presence of hazardous substances on the property, was sufficient to state a claim for arranger liability under CERCLA. The court finds no evidence of such aggravating circumstances in the sale at issue in the present action.

the previous discussion shows there is no issue of material fact and that defendant IFC is entitled to judgment as a matter of law.

Plaintiff's remaining claims are based on the Minnesota Environmental Response and Liability Act (MERLA) and state common law causes of action. Those claims were properly before this court pursuant to this court's supplemental jurisdiction over state law claims. *See* 28 U.S.C. § 1367. After dismissal of the plaintiff's federal claims, there is no independent basis for federal jurisdiction with respect to this defendant. Therefore, the court dismisses plaintiff's state law claims against IFC for lack of jurisdiction.

Accordingly, IT IS HEREBY ORDERED that:

Defendant Industry Financial Corporation's motion for summary judgment (Clerk Docket No. 108) is GRANTED;

Plaintiff Ashland Oil, Inc.'s motion for summary judgment (Clerk Docket No. 120) is DENIED; and

Plaintiff Ashland Oil, Inc.'s Minnesota state statutory and common law claims against defendant Industry Financial Corporation are DISMISSED for lack of jurisdiction.