The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA; PIC Realty Cor-
poration; 745 Property Investments,
Plaintiffs,

v.

UNITED STATES GYPSUM; W.R. Grace
& Company; The Celotex Corporation;
United States Mineral Products; Keene
Corporation; Pfizer, Inc.; Asbestos-
spray Corporation; and "John Doe
Companies," fictitious names for pres-
ently unidentified entities, Defendants.

The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Plaintiff,

v.

NATIONAL GYPSUM
COMPANY, Defendant.

Civ. A. Nos. 87–4227, 87–4238.

United States District Court,
D. New Jersey.

March 28, 1989.

Edward A. Zunz, Jr., Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for plaintiffs.

Dell M. Damsgaard, Morgan, Lewis & Bockius, Philadelphia, Pa., for U.S. Gypsum.

Thomas W. Polaski, O'Donnell, Kennedy, Vespole & Piechta, West Orange, N.J., for U.S. Mineral.

Stephen N. Dermer, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for Keene Corp.

Edward P. Abbot, Irene Warshauer, Anderson, Russell, Kill & Olick, New York City, for Keene Corp.

Mary F. Platt, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Celotex.

Dennis R. Bartholomew, Hoyle, Morris & Kerr, Philadelphia, Pa., Robert L. Ritter, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, N.J., for Nat. Gypsum.

Donald S. MacLachlan, Connell, Foley & Geiser, Roseland, N.J., for W.R. Grace & Co.

Granville D. Magee, Magee & Graham, Wall Township, N.J., for Asbestospray Co.

## OPINION

HAROLD A. ACKERMAN, District Judge.

### I. INTRODUCTION

This is an action for compensatory and punitive damages as well as declaratory relief against numerous corporate entities who have allegedly designed, manufactured or supplied asbestos-containing materials that had been used in the construction and maintenance of various buildings. This matter is presently before the court on various motions of defendants to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 12(c), plaintiffs' cross motion to strike certain affirmative defenses and for declaratory judgment as well as plaintiffs' motions to amend the complaint, consolidate this action with a substantially similar matter and dismiss one of the defendants without prejudice.

### II. PROCEDURAL HISTORY

The procedural history with respect to the substantive issues before me, as opposed to matters related to the legal representation of the litigants relate to two separately filed complaints. I shall review that history below.

#### A. *Prudential Insurance Company of America, et al. v. United States Gypsum Co., et al.*

On October 20, 1987, plaintiffs, Prudential Insurance Company of America ("Prudential"), a New Jersey corporation, PIC Realty Corporation ("PIC"), a Delaware corporation, and 745 Property Investments ("745 Property"), a voluntary trust association organized under the laws of Massachusetts, filed a ten count complaint for damages and declaratory relief from defendants, United States Gypsum Company, a Delaware corporation, W.R. Grace & Company, a Connecticut corporation, Celotex Corporation, a Delaware corporation, United States Mineral Products Co., a New Jersey corporation, Keene Corporation, a New York corporation, Pfizer Incorporated, a Delaware corporation, Asbestospray Corporation, a New York corporation, and

John Doe Companies. The caption of that case is *Prudential Insurance Co., et al. v. U.S. Gypsum, et al.*, No. 87–4227 (D.N.J. filed Oct. 20, 1988). As complete diversity between all of the plaintiffs and all of the defendants is lacking, this court presently has federal question jurisdiction over the complaint pursuant to 28 U.S.C. § 1331 as plaintiffs seek recovery pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA") 42 U.S.C. § 9601, et seq. In addition, plaintiffs request that I exercise pendent jurisdiction over state law claims of strict liability, negligence, breach of expressed and implied warranties, fraud and misrepresentation, unfair and deceptive trade practices, civil conspiracy and restitution as well as the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201–02. Defendants Pfizer, Asbestospray, Celeotex, Keene and United States Mineral each have filed answers to the complaint.

On December 10, 1987, defendants U.S. Gypsum and W.R. Grace moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). On December 14, 1987, defendant Keene similarily moved to dismiss the complaint on the grounds set forth by U.S. Gypsum and W.R. Grace. On December 15, 1987, defendant Celotex moved to dismiss counts 1 and 10 for failure to state a claim and the state law claims for lack of subject matter jurisdiction. On December 18, 1987, defendant Asbestospray filed a motion for judgment on the pleadings pursuant to Rule 12(c) and to dismiss the state claims pursuant to Rule 12(b)(1) for the reasons set forth in the brief of U.S. Gypsum and W.R. Grace. On January 8 and 25, 1988, respectively, defendants Pfizer and U.S. Minerals also filed motions to dismiss on the grounds set forth by their co-defendants.

On November 21, 1988, plaintiffs filed a motion to strike defendants' affirmative defense regarding the applicability of CERCLA to this action and request that I issue an order declaring that section 9607 of CERCLA authorizes private parties to recover costs incurred in responding to the alleged hazard posed by asbestos in buildings.

Thereafter, on December 16, 1988, plaintiffs filed a motion for an order (1) consolidating this lawsuit with a separate suit pending before me (2) permitting plaintiffs to amend their complaint and (3) permitting plaintiffs to dismiss defendant Pfizer, Inc. without prejudice.

I note here that by order filed October 6, 1988, United States Magistrate Stanley R. Chesler consolidated this action with an action entitled *Prudential Insurance Co. v. National Gypsum Co.*, No. 87–4238 (D.N.J. filed Oct. 21, 1988). In addition, by consent order filed January 24, 1989, plaintiffs agreed to voluntarily dismiss all claims against defendant Pfizer, without prejudice.

### B. *Prudential Insurance Co. v. National Gypsum Co.*

On October 21, 1987, plaintiffs, Prudential Insurance Company and PIC Realty Corp. filed a similar ten count complaint against National Gypsum Co., a Delaware corporation. The complaint predicates jurisdiction on the existence of a federal question involving recovery under CERCLA. Plaintiffs also seek relief under theories of strict liability, negligence, breach of express and implied warranties, fraud and misrepresentation, unfair and deceptive trade practices, civil conspiracy, restitution and for declaratory judgment. This action, captioned *Prudential Insurance Co., et al. v. National Gypsum Co.*, No. 87–4238 (D.N.J. filed Oct. 21, 1987), was originally assigned to Judge Barry but has since been reassigned to me and consolidated with Civil Action No. 87–4227.

Prior to reassignment and consolidation, on December 10, 1987, National Gypsum filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

On March 30, 1988, plaintiff Prudential filed its first amended complaint in the National Gypsum action in which it deleted the claims of PIC Realty. According to the amended complaint, plaintiff seeks relief under § 113 of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9613, and a declaratory

judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201–02, as well as relief under the common law theories of strict liability, negligence, breach of express and implied warranties, fraud and misrepresentation, unfair and deceptive trade practices, civil conspiracy and restitution.

On May 5, 1988, defendant National Gypsum filed its answer to the amended complaint. In its answer, defendant denies the presence of federal jurisdiction and specifically denies that CERCLA is applicable to any actions National Gypsum may have taken in the manufacture and distribution of asbestos-containing substances and that the sale of same does not constitute disposal under CERCLA. Defendant also asserts the affirmative defense that the complaint fails to state a claim upon which relief can be granted. These are the basis upon which defendant sought to dismiss the original complaint, and apparently the amended complaint as well.

### III. STANDARD OF REVIEW/FACTUAL CONTEXT

Since all of the parties seek dismissal of the federal claims either pursuant to Fed. R.Civ.P. 12(b)(1), 12(b)(6), or 12(c), I must, in considering these motions to dismiss, accept as true the factual allegations of the complaint and construe them liberally, in a light most favorable to the plaintiffs. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *Angelastro v. Prudential–Bache Securities Inc.*, 764 F.2d 939, 944 (3d Cir.1985); *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977); *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). I may dismiss the claims which are the subject of the motions if it "appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

As the court has declined to consider additional assertions of fact beyond those alleged in the complaint, I am bound by the prospective for reviewing Rule 12 motions and therefore, accepting all facts plead in the complaints as true, the factual scenario of which these cases arise is as follows: Prudential, PIC and 745 Realty have an ownership interest in a number of commercial office buildings, hotels and residential rental properties located in Arizona, Arkansas, California, Colorado, Florida, Georgia, Illinois, Louisana, Maryland, Minnesota, Missouri, Nebraska, New Jersey, New York, Oklahoma, Pennsylvania, Tennessee and Texas, which have been constructed and/or maintained with asbestos-containing products that defendants had allegedly manufactured, processed, marketed, distributed, supplied and/or sold.

Asbestos is a fiberous material that was commonly used through the 1970s as a component of a variety of building materials such as fireproofing and insulation. Plaintiffs assert that some asbestos-containing materials had been sprayed onto steel beams, girders, floors, ceilings, walls and in the ventiliation systems of their buildings.

Plaintiffs assert that in the 1970's it was determined that the disturbance, damage or deterioration of asbestos-containing materials causes the release of asbestos fibers that building occupants may inhale. The fibers are "a known human carcinogen" and thus exposure to asbestos dust can cause various diseases about which the defendants knew or should have known prior to the sale of the materials. *See* ¶ 11 of the First Amended Complaint filed in *Prudential v. National Gypsum*, No. 87–4238 and ¶ 18 of the Complaint filed in *Prudential et al. v. United States Gypsum, et al.*, No. 87–4227. Specifically, plaintiff contends that defendants knew or should have known of the contamination hazards posed by the presence of asbestos-containing materials in light of the medical and scientific reports published from the early 1930's through the early 1960's. Plaintiffs assert that despite this knowledge, however, defendant fraudulently concealed the dan-

gers, and failed to warn foreseeable users of the hazards and risks associated with asbestos materials, failed to represent the risks accurately and failed to test those materials and/or develop asbestos-free substitutes.

Because of the purported health dangers, plaintiffs assert that they have instituted an inspection, monitoring, maintenance and abatement program with respect to the buildings at issue so as to determine the extent to which asbestos-containing materials are present, the extent of contamination and to accordingly institute the necessary remedial measures to remove, enclose or otherwise repair such materials. Through these civil actions, plaintiffs seek reimbursement for the costs of these programs and for damage that has or will occur from the presence of the asbestos-containing products in their buildings.

Of particular relevance here is plaintiffs claim for relief pursuant to CERCLA.

In Count One of the First Amended Complaint filed in *Prudential v. National Gypsum* plaintiff alleges:

24. Within the meaning of the comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq., defendant is a person who has arranged for the disposal of a hazardous waste substance in the facilities identified ... in ... this First Amended Complaint, from which the substance has been and will continue to be released into the environment.

25. Costly abatement actions by plaintiff have been and will be necessary response actions consistent with the federal National Contingency Plan.

26. The actions and failures to act by defendant have directly, foreseeably and proximately caused damage and injury to plaintiff, including but not limited to physical harm to and contamination of plaintiff's buildings, and the expense of testing, monitoring, and abating the asbestos-containing product hazards in those buildings, for which recover is allowed under CERCLA.

Similarly, in Count I of the complaint filed in *Prudential et al. v. U.S. Gypsum et al.* plaintiffs allege:

40. By virtue of the design, manufacture, sale and distribution by defendants of asbestos-containing materials to be incorporated in the buildings identified in the Appendix to this complaint, and within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* (hereinafter "CERCLA"), defendants are persons (42 U.S.C. § 9601(21)) who have arranged and are responsible for the disposal (42 U.S.C. §§ 9607(a)(3) and 9601(29)) of asbestos, a hazardous substance (42 U.S.C. § 9601(14)(D) and (E)), in facilities (42 U.S.C. § 9601(9)) from which the hazardous substance has been and will continue to be released into the environment (42 U.S.C. § 9601(22)).

41. Because of the release and threatened release of this hazardous substance into the environment, costly inspection, monitoring, maintenance and abatement measures by plaintiffs have been and will be necessary response actions (42 U.S.C. § 9601(23) and (24)) consistent with the National Contingency Plan (40 C.F.R. Part 300) for responding to releases of hazardous substances.

42. The actions and failures to act by defendants have directly, foreseeably and proximately caused damage and injury to plaintiffs, which includes but is not limited to physical harm to and contamination of the buildings, and the expense of testing, monitoring and abatement response actions to remedy and eliminate the asbestos-containing product hazards in those facilities, for which recovery is allowable under CERCLA. 42 U.S.C. § 9607(a)(3)(B).

Defendants have moved to dismiss plaintiffs claim under CERCLA on the ground that the statute applies to the cleanup of abandoned and inactive hazardous disposal sites, and not to the regulation of substances that are components of commercial products used to construct buildings. Specifically, defendants contend that the 1986 amendments to the act specifically limit its applicability, excluding from its coverage

products which are part of the structure of a building. In addition, defendants argue that the essential elements of a viable CERCLA claim are absent in this case. Since plaintiffs' have not alleged that defendants have "disposed" of a hazardous substance at a "facility", as those terms are defined in the statute. Defendants assert that since one may dispose only of a waste, and since the asbestos at issue is not a discarded material, the manufacture and sale of asbestos for commercial use does not constitute disposal of a waste and hence its cleanup cannot be a basis for CERCLA liability. Further, even assuming defendants did dispose of a waste, they argue that the disposal did not occur at a "facility" since the substance was placed in a consumer product which the statute explicity excludes from the definition of a facility. Finally, defendant Celeotex argues that the release of asbestos fibers is not a release as defined under CERCLA since it does not involve the emitting of a substance into the air, but rather involves the emission of dust in an enclosed building. Finally, defendants assert that as plaintiffs fail to state a claim under CERCLA, the basis for federal jurisdiction is removed, and therefore the court should decline to exercise pendent jurisdiction and the complaint should be dismissed.[1]

In support of their cross motion to strike defendants' affirmative defenses that CERCLA does not apply to this case and for a declaratory judgment that CERCLA allows private parties to recover the costs of responding to the alleged hazard created by asbestos in buildings, and in opposition to defendants' motion to dismiss, plaintiffs argue that the language and spirit of CERCLA demonstrate that the Act allows for private cost recovery for the abatement of asbestos in buildings in a case in which defendants have arranged for the disposal of a hazardous substance that is being released or is threatening to be released from Prudential's buildings, which are facilities.

Plaintiffs argue that CERCLA was enacted to respond to the problem of hazardous substance release, not just the cleanup of abandoned waste dumps, through a bifurcated structure that allows for both private enforcement actions and superfund financed cleanups.

Plaintiffs assert that their complaint alleges facts that satisfy each of the elements for CERCLA liability. First, plaintiffs assert that defendants have not disputed that they are persons who can be liable under § 9607(a). Second, plaintiffs allege that through the transport and distribution of asbestos-containing materials, defendants arranged for the treatment and transport of a hazardous substance. Third, plaintiffs argue that defendants do not dispute that asbestos is a hazardous substance within the meaning of CERCLA. Fourth, plaintiffs assert as the complaint alleges that the buildings are a place at which hazardous substances are found, they are facilities. Relatedly, plaintiffs argue that to say that the facility is a consumer product is irrelevant here since the consumer product exception applies only to products in consumer use and the asbestos here was not in "consumer use." Fifth, plaintiffs contend that the escape of asbestos fibers into the environment is a release within the broad meaning of CERCLA. Sixth, plaintiffs assert that they will expend money to remove, monitor and evaluate the release or threat of release of hazardous substances

Plaintiffs also argue that the literal meaning of the 1986 amendments to the statute reflect only that they were intended to limit the response action which the federal government could take and did not similarly limit actions by private parties and thus, while the federal government may not use Superfund monies to provide for the removal of substances from products which are part of the structure of a building, private parties are still authorized to recover costs incurred in dealing with such releases.

Plaintiffs also argue that the existence of factual issues preclude granting defen-

---

**1.** Some of the defendants also argue that as plaintiffs proposed amended complaint also fails to state a viable claim under Federal RICO, the court should also decline exercising pendent jurisdiction over the claims embodied therein and dismiss the action.

dants motions to dismiss and that the proposed amended complaint stating a claim under the Racketeering Influenced and Corrupt Organization Act ("RICO") 18 U.S.C. § 1961, *et seq.* makes defendants' argument regarding the lack of federal question jurisdiction moot and even in the absence of this claim, the court has the discretion to and should exercise its discretion to hear the pendent state law claims.

## IV. DISCUSSION

In 1980, Congress passed CERCLA to provide the nation with a comprehensive mechanism for the cleanup of inactive hazardous waste sites, hazardous spills and the release of hazardous substances into the environment. *United Technologies Corp. v. United States Environmental Protection Agency,* 821 F.2d 714, 717 (D.C. Cir.1987); *Dedham Water Co. v. Cumberland Farms, Inc.,* 805 F.2d 1074, 1080 (1st Cir.1986); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 890 (9th Cir.1986); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1037, 1041 (2d Cir.1985); *United States v. Northernaire Plating Co.,* 670 F.Supp. 742, 745 (W.D.Mich.1987); *Allied Towing v. Great Eastern Petroleum Corp.,* 642 F.Supp. 1339, 1348 (E.D.Va. 1986); *New York v. General Electric Co.,* 592 F.Supp. 291, 296 (N.D.N.Y.1984); *United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823, 838 (W.D.Mo. 1984), *aff'd in part, reversed in part on other grounds,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), *citing, United States v. Price,* 523 F.Supp. 1055, 1109 (D.N.J.1981), *aff'd,* 688 F.2d 204 (3d Cir. 1982); H.R.Rep. No. 1016 at 22, reprinted in 1980 U.S.Code Cong. & Ad.News at 6119, 6125; *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1142 (E.D.Pa.1982).

The statute embodies a bifurcated scheme to promote the cleanup of hazardous sites, spills and releases. First, through the creation of Superfund, the federal government is provided with the tools to respond to the growing problems resulting from hazardous waste disposal. 42 U.S.C. §§ 9604–05, 9611–12. Second, the statute also authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation and to thereby insure, so far as possible, that those responsible for the creation of the problem are liable for the response costs in cleaning them up. 42 U.S.C. § 9607(a)(1–4); *Walls v. Waste Resource Corp.,* 823 F.2d 977, 980–81 (6th Cir.1987); *Dedham, supra* at 1081; *Wickland, supra* at 892; *Violet v. Picillo,* 648 F.Supp. 1283, 1288 (D.R.I.1986); *Idaho v. Bunker Hill Co.,* 635 F.Supp. 665, 672 (D.Idaho 1986); *Northeastern Pharm & Chemical, supra* at 848; *General Electric, supra* at 302; *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1112 (D.Minn. 1982).

■ To present a prima facie case for the recovery of the response costs of cleanup of such waste, a private plaintiff must prove the following:

(1) that the defendant is within one of four statutory categories of "covered persons" liable for such costs;

(2) that there has been a release or there is a *threat* of release of a hazardous substance from a facility;

(3) which has caused plaintiff to incur clean-up and response costs;

(4) that the costs expended were necessary;

*and*

(5) that the responsive actions taken and the costs incurred were consistent with the National Contingency Plan.

*Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1278 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988). At issue today is whether the defendants are "covered persons" who can be held liable for the costs of response. Plaintiffs contend that the defendants are covered persons pursuant to 42 U.S.C. § 9607(a)(3)(B). According to that liability provision:

any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport, ... disposal, or ...

treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ...

... shall be liable for....

Any other necessary costs of response incurred by any other person consistent with the national contingency plan.

42 U.S.C. § 9607(a)(3)(B).

■ Liability under § 9607(a)(3) requires proof of four basic elements:

(1) that the person disposed of hazardous substances;

(2) at a facility which contains, at the time of discovery, hazardous substances of the kind of which the entity disposed;

(3) that there is a release or a threatened release of that or any hazardous substance;

(4) which triggers the incurrence of response costs.

*United States v. Farber*, 27 E.R.C. 1978, 1988 WL 25427 (D.N.J.1988), *C. Greene Equipment Corp. v. Electron Corp.*, 697 F.Supp. 983 (N.D.Ill.1988); *Violet, supra* at 1289–90, 1295; *United States v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Pa.1983); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 190 (W.D.Mo.1985); *United States v. Ward*, 618 F.Supp. 884, 893–94 (E.D.N.C.1985). Given the conjunctive nature of this test, failure to prove any one element bars recovery.

At issue in these motions are the first two elements of 9607(a)(3) liability. According to the first element, plaintiff must show (a) defendant is a person (b) who disposed of (c) hazardous substances. Under the statute, the term person includes both individual and corporate entities. 42 U.S.C. § 9601(22); *United States v. Northeastern Pharmaceutical*, 810 F.2d 726, 743 (8th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *Ward, supra* at 894. Since, the complaint properly identifies the defendants as corporate entities, plaintiffs have plead that defendants are persons under CERCLA and have thereby satisfied the first portion of the test.

The statute defines a hazardous substance as:

(A) any substance designated pursuant to section 1821(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas); ...

42 U.S.C. § 9601(14). Plaintiffs assert that defendants manufactured, sold and distributed asbestos and further claim that it is a hazardous substance.

Asbestos has been specifically designated as a hazardous substance pursuant to 42 U.S.C. § 9602. *Knox v. A C & S Inc.*, 690 F.Supp. 752, 755 (S.D.Ind.1988); *3550 Stevens Creek Associates v. Barclays Bank of Calif.*, No. C–87–20672, slip op. at 2 (N.D. Cal. filed Sept. 28, 1988) (unpublished), *appeal docketed* No. 88–15503 (9th Cir.1988); *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143, 1148 (D.Ariz.1984); *Dayton Independent School District v. W.R. Grace, et al.*, No. B–81–277–CA, slip op. at 28 (E.D.Tex. Oct. 3, 1986) (unpublished). Hence, the complaint as plead satisfies two of the three portions of the first element of liability under § 9607(a)(3).

I shall next examine whether plaintiffs have plead facts that demonstrate defendants disposed of or arranged for the disposal of hazardous substances. In the absence of the disposal of or an arrangement for the disposal of a hazardous substance, liability under § 9607(a)(3) cannot attach. *Jersey City Redevelopment Authority v. PPG Industries*, 655 F.Supp. 1257, 1261 (D.N.J.1987), *aff'd*, 866 F.2d 1411 (3d Cir. 1988) 28 E.R.C. 1873, 1879–80.

According to § 9601(29):

The term "disposal," "hazardous waste," and "treatment" shall have the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C. § 6903].

Under the Solid Waste Disposal Act, the term "disposal"

means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constitutent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

In examining the meaning of the term "disposal" it must be noted that:

In the absence of a clearly expressed legislative intention to the contrary the language of the statute itself must ordinarily be regarded as conclusive.... Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete.

*Burlington Northern Railroad Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987). An analysis of the term "disposal" calls for an examination of its everyday meaning, the purpose of the legislation of which it is a part and the context and structure of the legislation. *American Mining Congress v. United States Environmental Protection Agency*, 824 F.2d 1177, 1185 (D.C.Cir.1987). The relevant plain-English meaning of the word disposal is:

a giving away, transfer, bestowal ... a disposing of; getting rid of.

*See* Webster's New Universal Unabridged Dictionary 529 (2d ed. 1983). "To dispose of" or "to make a disposal of" means "to part with; to alienate; to sell; as the man has disposed of his house," or "to put away; to get rid of; as the stream supplies more water than can be disposed of." Looking at the term disposal in the context of the statute, however, it is clear that liability attaches to a party who has taken an affirmative act to dispose of a hazardous substance, that is, "in some manner the defendant must have *dumped* his waste on the site at issue," as opposed to convey a useful substance for a useful purpose. *Jersey City Redevelopment, supra* at 1260 (emphasis added), 28 ECC at 1879 (where the court noted that the sale of contaminated soil for transport to a landfill constitutes a statutory disposal for which the seller may be liable); *Florida Power & Light Co. v. Allis–Chalmers Corp.*, No. 86–1571 (18 E.L.R. 20998), slip op. at 3 (S.D.Fla. filed March 22, 1988) in which the court recognized that "the sale of a product *per se* is not a disposal arrangement giving rise to liability under CERCLA." Thus, while disposal may be merely the placement of a hazardous substance into or on any land, *see Tanglewood East Homeowners v. Charles–Thomas Inc.*, 849 F.2d 1568 (5th Cir.1988), the imposition of statutory liability for disposal depends upon examining the transaction with respect to the transfer of a hazardous substance to see if it involved the sale of a product rather than a disposal arrangement. *Jersey City, supra* at 1260.

■ This is so because the use of the phrase disposal:

clearly circumscribes the types of transactions in hazardous substances to which liability attached, narrowing liability to transactions in the disposal or treatment of such substances.... [Thus,] liability for ... damage under § 9607(a)(3) attaches only to parties who transact in a hazardous substance in order to dispose of or treat the substance.

*Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 654 (N.D.Ill. 1988). In *Hines*, the court stated that the

mere sale of a hazardous substance for use in the wood treatment process did not constitute arranging for the disposal or treatment of a hazardous substance, even when process run-off containing that substance had been placed at the site. *Id.* at 656. Similarily, in *United States v. Westinghouse Electric Corp.*, 22 E.R.C. (BNA) 1230, (S.D.Ind.1983) the court concluded that a defendant who sold a product that contained polychlorinated biphenyls ("PCBs") for use in manufacturing did not engage in a disposal and hence was not liable for the costs related to the clean-up of the contaminated effluent deposited in a landfill. In *Westinghouse,* the court found it significant that plaintiff did not allege that defendant made the sale of the substance in order to dispose of its own wastes or manufacturing by-products. *Id.* at 1233. The court reasoned that as defendant "did not generate or dispose of hazardous waste and did not contract for disposal of waste" defendant could not be found liable under CERCLA. Hence, the sale of a hazardous substance for a purpose other than its disposal does not expose defendant to CERCLA liability. *Farber, supra.* Merely characterizing the transaction as a sale, however is insufficient to avoid liability. *Ward, supra* at 895. Rather, if the transaction involves, for example, sale of a new useful product containing a hazardous substance, as opposed to the sale of a substance merely to "get rid of it," a claim under CERCLA may not be available. *Florida Power, supra* at 6; *United States v. A & F Materials Co.,* 582 F.Supp. 842, 845 (S.D.Ill.1984); *General Electric, supra* at 297; *Conservation Chemical Co., supra* at 241. *See also Kalik v. Allis Chalmers,* 658 F.Supp. 631 (W.D.Pa.1987). For example, in *C. Greene Equipment, supra,* defendant sold plaintiff equipment which contained PCB oil. The court found that as the equipment was nonleaking and usable when sold, and the hazardous substance was hence enclosed when sold, the sale did not constitute an "affirmative[ ] act to dispose of waste in some manner by 'dump-

ing' the waste on the site in issue." *Id., quoting Jersey City, supra* at 1260.

Thus, while CERCLA holds violators strictly liable for violations, *Jersey City, supra* 28 ERC at 1880, and hence the court need not examine the intent or knowledge with which the transaction occurred, *see A & F Materials Co., supra* at 845; *Jersey City, supra* at 1261; *but see Hines, supra* at 655, the court must examine the character of the transaction to determine whether or not a statutorily defined disposal has occurred. *See Allied Towing, supra* at 1350; *Conservation Chemical, supra* at 241; *Jersey City* at 1261, *see also, A & F Materials, supra* at 845 in which the court stated that:

> liability for releases under § 9607(3) is not endless, it ends with that party who both aimed the hazardous waste and made the crucial decision *how it would be disposed of* or treated by them.

(emphasis added)

Applying this analysis to the facts as plead it appears that plaintiffs claim that defendants manufactured processed, marketed, distributed, supplied and sold asbestos-containing products for use in a variety of building materials, including fireproofing and insulation. Although in the portions of their complaint related specifically to their CERCLA claim plaintiffs purport that defendants engaged in disposal, the factual allegations reveal that the transfer of the asbestos-containing products was indeed a sale of a substance for the use in the construction of a building. Hence, as there was no affirmative act to get rid of the asbestos beyond the sale of it as part of a complete,[2] useful product, for use in a building structure, the plaintiffs' allegations fail to reveal that there has been an arrangement for the disposal of hazardous substances, even though such substances may have come to eventually flake off and potentially pose a health risk. Plaintiffs' factual allegations even taken as true, therefore, do not reveal that the transfer of the asbestos-containing prod-

---

**2.** Like *Greene, supra,* there is no allegation that the hazardous asbestos was loose or friable

when sold.

ucts was tantamount to a disposal of same, but rather reveal that there had been a conveyance of a useful, albeit dangerous product, to serve a particular, intended purpose. To say that such a transaction constitutes a CERCLA-type disposal "would require too strained an interpretation of the statutory definition of [the] terms." *Corporation of Mercer University v. National Gypsum, Co.*, No. 85–126–3 (MAC) slip op. at 20 (M.D.Ga. March 9, 1986) (unpublished). *See also 3550 Stevens Creek, supra* at 3 in which the court held that CERCLA does not provide for the recovery costs incurred in the removal of asbestos from buildings.

Thus, even assuming that the other elements of § 9607(a)(3) liability have been met,[3] the absence of factual allegations which support a conclusion that there has been a "disposal" as defined under CERCLA, fails to state a viable CERCLA claim. As there has been no "disposal" under the factual scenario alleged in plaintiffs complaint, plaintiffs fail to state a claim under CERCLA upon which relief may be granted and therefore this cause of action must be dismissed and defendants request that I do so is hereby granted. In light of this disposition, and for all of the reasons set forth above, plaintiffs' cross-motions are denied.

■ I so conclude despite the potential effect of 42 U.S.C. § 9604, pursuant to which the President, rather than private parties, is barred from instituting a removal or remedial action under CERCLA in response to a release or threat of release from products which are part of the structure of buildings. Plaintiffs have informed me that the Court of Appeals for the Ninth Circuit is currently considering whether or not private actions under CERCLA are subject to this limitation. According to its *amicus* brief, submitted in *3550 Stevens Creek Associates v. Barclays Bank of Calif.*, No. 88–15503, the Environmental Protection Agency ("EPA") argues that the above described limitation applies only to federal government response actions under § 9604. The EPA contends that the statutory language and structure of CERCLA made clear that section 9604 limits only the actions of the EPA and does not preclude parties from using CERCLA to recover clean-up costs incurred in the removal of asbestos from buildings in the presence of a release or threatened release of same in the environment. Moreover, the EPA argues that to bar private parties from using CERCLA for recovery of clean-up costs incurred from asbestos removal would be contrary to Congress' desire to encourage private response actions in order to preserve the assets of Superfund.[4]

The EPA argues that its position finds support in the Reports of the Senate and Conference Committee related to the 1986 Superfund Amendments and Reauthorization Act argues that these reports reflect Congress' view that it intended to limit the ability of the EPA from removing building materials without explicitly limiting private actions, which are clearly independent of the federal government. The EPA argues that:

> If Congress had meant to limit cost recovery for responding to releases of

---

3. Parenthetically, I question whether the release of asbestos fibers inside the building constitutes a release into the *environment* as defined under CERCLA given the observations of other courts that the "environment" referred to in the statute includes the atmosphere, external to the building, and hence does not encompass the release of a substance inside an enclosed building. *See Knox, supra* at 757; *First United Methodist Church v. U.S. Gypsum*, No. 88–2030 slip op. at 11 (D.M.D. Filed Oct. 13, 1988) (unpublished); *Electric Power Board of Chattanooga v. Westinghouse Electric Corp., et al.*, No. 1–87–93, slip op. at 26 (E.D.Tenn. filed August 26, 1988) (unpublished).

4. *See Smith Land & Imp. Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (3d Cir.1988) in which the court stated that:

> The costs associated with cleanup must be absorbed somewhere. Congress has emphasized funding by responsible parties, but if they cannot be ascertained or cannot pay the sums necessary, federal monies may be used.
>
> Expenses can be borne by two sources: the entities which had a specific role in the production or continuation of the hazardous condition, or the taxpayers through federal funds. CERCLA leaves no doubt that Congress intended the burden to fall on the latter only when the responsible parties lacked the wherewithal to meet their obligations.

asbestos, it presumably would have placed such a limit in Section 107 itself, as it did for certain releases of registered pesticides, 42 U.S.C. 9607(i), and federally permitted releases, 42 U.S.C. 9607(j). Brief of the EPA at 9–10

I find these statements persuasive and respectfully disagree with the conclusions to the contrary of Judge Auiglar in *3550 Stevens Creek Associates, supra,* and Judge Alaimo in *Mercer University, supra.* The applicability of CERCLA to private recovery actions, such as the one presented here, however, has no bearing on plaintiffs' failure to state a claim under CERCLA since, even without reference to this legislation, the facts of the complaint fail to set forth a claim under CERCLA since the facts, taken as true, fail to show that defendants have *disposed* of a hazardous substance.

Turning now to plaintiffs request to consolidate civil action No. 87–4227 with civil action No. 87–4738, I note that by order dated October 5, 1988, Magistrate Chesler consolidated these actions for all purposes and thus plaintiffs' motion for consolidation is moot.

As to plaintiffs' request to dismiss all of its claims against defendant Pfizer, I note that by consent order filed January 24, 1989, plaintiffs and defendant Pfizer agreed to dismiss such claims against Pfizer without prejudice and hence plaintiffs' motion that I do so now has also been rendered moot.

I shall now address plaintiffs' motion to amend their complaint.

■ Federal Rule of Civil Procedure 15(a) provides in part, that:

[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires.

Hence, if a responsive pleading is filed, a plaintiff may amend its pleadings by leave of court or by written consent of the adverse parties named in the complaint that is subject to amendment. *See Davis v. Coler,* 601 F.Supp. 444, 447 (N.D.Ill.1984), *aff'd,* 789 F.2d 474 (7th Cir.1986). If no responsive pleading has been served and plaintiff has not previously amended its pleadings, plaintiff may amend its pleadings as of right. *See* Fed.R.Civ.P. 15(a). Neither a motion to dismiss nor a motion for summary judgment constitutes a responsive pleading under Fed.R.Civ.P. 15(a). *Centifanti v. Nix, et al.,* 865 F.2d 1422, 1431 n. 9 (3d Cir.1989). Since defendants U.S. Gypsum and W.R. Grace have filed motions to dismiss, and have not yet served responsive pleadings, plaintiffs are entitled "as a matter of course" to amend their complaint against these entities without leave of court.

Defendants National Gypsum, Pfizer, Asbestospray, Celotex and Keene, however, have each filed responsive pleadings in the form of answers to the complaint. In these situations, plaintiffs may amend their complaint only with leave of court or by written consent of the adverse parties. As these defendants have not provided such consent, plaintiffs may amend their complaint only with leave of court. Plaintiffs seek to amend their complaint to add to or clarify their consolidated claims of strict liability, absolute liability, negligence, breach of express and implied warranties, fraud and misrepresentation, unfair and deceptive trade practices, civil conspiracy, restitution, and declaratory judgment for indemnification. Specifically, plaintiff asserts that four of the nine new counts clarify claims originally asserted. For example, the strict liability count has been broken into the following three counts: Strict liability for design defect, risks/benefits strict liability, strict liability for failure to warn. The original declaratory judgment count has broken into two counts, one for indemnification and another for a declaration that plaintiffs are entitled to same. In addition, a new "equitable fraud" count has been broken out of the original "fraud and misrepresentation count". Four additional proposed counts seek recovery order collective theories of liability pursuant to the theories of market share liability, alter-

native liability, concert of action liability and enterprise of liability. Finally, plaintiffs seek to add a claim under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

In support of their motion for leave to file an amended complaint, plaintiffs argue that since the amendment has been sought before extensive discovery has taken place and before prejudice can occur and as it has been promptly sought by new counsel, leave to amend should be freely given. Plaintiffs further assert that their RICO claim is plead with particularity and demonstrates that defendants' misconduct is beyond that of other RICO cases as the defendants and victims are numerous, the conduct lasted over half a century, and the damages are large.

Plaintiffs further claim that most of the material facts alleged in the proposed complaint were alleged in the original complaints in support of the fraud, misrepresentation and conspiracy counts. Thus, defendants have been on notice regarding plaintiffs' allegations of fraud and conspiracy since the inception of the litigation. Plaintiffs also assert that their RICO claim has been plead with the level of particularity required in this circuit. Plaintiffs contend that not only have they given defendants sufficient information to put them on notice of the claims but that it is proper to presume defendants have some knowledge of their own representations made to those who purchased their products.

Plaintiffs also assert that their RICO cause of action, and each element thereof, is sufficiently alleged as it sets forth allegations that defendants engaged in a pattern of racketeering activity through numerous acts of mail and wire fraud over a lengthy period of time upon numerous victims. Plaintiffs also argue that they have alleged sufficiently the existence of various enterprises under both *Seville Industrial Machinery v. South Most Machinery*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) and *United States v. Riccobene*, 709 F.2d 214 (3d Cir.), *cert. denied sub nom.*,

*Ciancaglini v. United States*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

Plaintiffs also assert that they are entitled to add the four separate collective liability counts because they present viable state claims and are applicable in asbestos actions even though asbestos products may be produced under different formulas. Plaintiffs also assert that the absence of a particular potential defendant should not affect the named defendants' exposure to the claims against them.

Celotex and U.S. Gypsum oppose plaintiffs' attempt to amend their complaint to add a claim under the federal RICO act on the ground that it is an exercise in futility since the proposed amended complaint would be subject to dismissal under Rule 12(b)(6). Specifically, these defendants argue that the alleged acts of fraud are insufficient to support a RICO claim because they are not pleaded with the specificity required by Rule 9(b). Specifically, defendants contend that plaintiffs have made conclusory allegations that defendants engaged in unidentified acts of fraud and plaintiffs fail to set forth the time, place, or identity of the speakers or receipients of the fraudulent representations. Defendants also argue that most of the wrongful acts alleged are not acts of racketeering activity that could support a RICO claim. For instance, defendants contend that plaintiffs' assertions of misrepresentation have been made without any allegation that the mails or wires have been used in connection with the misrepresentation. In addition, defendants assert that plaintiffs assert only a series of isolated incidents of alleged racketeering activity rather than a RICO-type patterns characterized by a relationship among the acts which demonstrate that the unlawful activity is sufficiently extensive to be continous.

Defendants also state that plaintiffs fail to state a claim under 18 U.S.C. § 1962(a) because they fail to allege that any of the defendants used or invested income derived from a pattern of racketeering activity, but rather allege that the income was derived from "the manufacture and sale" of defendants' product. Defendants also contend

that plaintiffs have not alleged that any of their injuries were caused by conduct that constitutes a RICO violation, such as the investment of defendants' income in the operation of an enterprise.

Defendants also claim that plaintiffs do not state a claim under § 1962(c) because plaintiffs fail to allege sufficiently that defendants committed acts of racketeering activity or plead that these acts amounted to a RICO pattern and attempts to allege defendants conducted the affairs of an enterprise through such activities are deficient as a matter of law since there is no allegation of *how* each defendant *conducted* the affairs of the enterprise through such activities. Specifically, defendants argue that the complaint fails to allege how any of defendants' purported acts of mail or wire fraud were committed by a defendant's membership in a trade association. Defendants contend that plaintiffs also fail to allege what the affairs of an "association-in-fact" enterprise were or how any defendants conducted those affairs through the pattern of conduct alleged. Defendants also contend that since plaintiffs have made no allegation that they received any of the materials mailed or had any dealings with the trade association, plaintiffs have not alleged the existence of a causal connection between any injury suffered by plaintiffs and any RICO-type conduct.

Defendants also assert that plaintiffs fail to state a claim under § 1962(d) because their substantive claims under §§ 1962(a) and (c) are deficient and because plaintiffs fail to allege that any of the defendants evidenced any objective manifestation of agreement to violate any of the substantive sections of RICO and also fails to allege the circumstances of the conspiracy claim with particularity.

Defendant National Gypsum argues that the proposed amended complaint should not be allowed since it seeks to add a legally insufficient claim and is offered in bad faith, merely as a basis to manufacture federal jurisdiction. National Gypsum also argues that this court should not permit plaintiffs to convert their products liability claim into a RICO claim and should prohibit the amendment of such a facially deficient claim. In this regard National Gypsum also asserts that plaintiffs have failed to allege when the purportedly fraudulent representations were made, the actual content of same, who made them and who received them, whether there has been detrimental reliance, and whether the statements were made knowingly or with an intent to defraud. Defendant National Gypsum further argues that the lack of particularity hinders its ability to prepare a statute of limitations defense.

W.R. Grace also opposes plaintiffs' motion and argues that plaintiffs should be precluded from adding a federal RICO claim in this case because it would reflect "an unprecedented attempt to expand the reach of RICO far beyond even the admittedly broad reach afforded it today [which] would [result in] a grave injustice on.... all the defendants...." Brief of defendant W.R. Grace in opposition to Plaintiffs' Motion for Leave to Amend at 16. Grace joins the arguments of Celotex and National Gypsum and also argues that the proposed amended complaint is deficient as a matter of pleading under Rule 9(b) and as a matter of substantive law because it cannot satisfy the reliance or causation requirement and thus as the proposed pleading would not survive a motion to dismiss, the amendment should be denied.

Defendant Keene joins the arguments of W.R. Grace, Celotex, and National Gypsum and further asserts that plaintiffs proposed amended complaint attempts to confer federal jurisdiction by couching their allegations of intentional misrepresentation and fraudulent concealment into the predicate acts of mail and wire fraud. Keene also asserts that the court should curb plaintiffs' attempt to convert this products liability claim into a civil RICO claim.

Keen further argues that the proposed amended complaint fails to allege a pattern of racketeering activity as to Keene since its claim of corporate relation with certain alleged predecessor entities or membership in manufacturing associations is without factual basis.

Defendants also oppose plaintiffs' request to amend their complaint to assert various theories of collective liability. In this regard W.R. Grace specificaly argues that since the causes of action asserting theories of collective liability in an asbestos case in which the relevant market is not easily defined, the risks attendant to the defendants' products are not capable of definition and measurement, plaintiffs have the means to ascertain the identity of the manufacturer, and the asbestos products at issue are not identical in either formula or function and hence are not fungible nor used for all of the same purposes. In addition, defendants assert that plaintiffs' failure to join Johns–Manville and/or other larger asbestos manufacturers negates the plaintiffs' ability to put forth a claim under the market share theory since a substantial share of the market is not present before the court.

Grace also argues that these collective theories of liability are simply different ways of examining the issue of causation set forth in claims of breach of warranty and negligence, and are not independent causes of action.

As stated previously, Rule 15(a) specifically states that the court should permit a party to amend its pleadings "freely ... when justice so requires." Thus, Rule 15(a) reflects a general presumption in favor of allowing a party to amend its pleadings. *See, e.g., Boileau v. Bethlehem Steel Corp., et al.,* 730 F.2d 929 (3d Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984); *Heyl & Patterson Int'l v. F.D. Rich Housing,* 663 F.2d 419, 425 (3d Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). *See also Kiser v. General Electric Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988) in which the court stated that "great liberality in allowing amendment ... is often appropriate, especially when an amendment will further the ends of justice, effectuate presentation of a suit's merits and not prejudice the opposing party."

Furthermore, in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the United States Supreme Court stated that the district court should grant requests for leave to amend pleadings freely unless the underlying circumstances illustrate an:

> apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure the deficiences by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etcetera [and thereby demonstrate that justice would not be served by granting a party leave to amend its pleadings].

*See also Centifanti, supra* at 1431 in which the court recognized that the district court may properly deny leave to amend where the amendment would notwitstand a motion to dismiss. With these principles in mind, I shall first address the propriety of allowing plaintiffs to amend their complaint to state a federal RICO claim.

In reviewing the legislative purpose behind the RICO statute, the Court of Appeals for the Third Circuit recently observed that:

> Congress mandated that RICO 'shall be liberally construed to effectuate its remedial purpose.' Organized Crime Control Act, Pub.L. No. 91–452 § 904, Cal. 84 Stat. 942, 947 (1970) (codified at 18 U.S.C. § 1961 comment (1982)). We have utilized this expansive language to construe liberally RICO provisions as well as RICO as a whole.

> \* \* \* \* \* \*

> At a minimum the liberal construction language requires that we resist the temptation to restrict civil RICO.

> \* \* \* \* \* \*

The Supreme Court has adopted an expansive tenor in describing the legislative history of civil RICO.

> 'RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime. While few of the legislative statements

about novel remedies and attacking crime on all fronts, were made with direct reference to [civil RICO], it is this spirit that all of the Act's provisions should be read.'

*Sedima, [SPLR v. Imrex Co.,* 473 U.S. 479, 498, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985)] (citations omitted). The court has clarified that "RICO is to be read broadly." *Id.* at 497 [105 S.Ct. at 3285]. The language of the statute as well as "Congress' self-consciously expansive language and overall approach" mandate such a reading. *Id.* at 498 [105 S.Ct. at 3285–86].

*Keystone Insurance Co. v. Houghton, et al.,* 863 F.2d 1125, 1128 (3d Cir.1988). (citations and footnotes omitted); *Rose v. Bartle, et al.,* 871 F.2d 331, 355–56 (3d Cir. 1989). For a recent, rather expansive use of civil RICO in this Circuit *see Northeast Women's Center, Inc. v. McMonagle,* 868 F.2d 1342, 1357 (3d Cir.1989) in which the Court stated that "civil RICO could appropriately be applied to defendants' intimidation and harassment of [employees and patients of the *Northeast Women's Center,*] resulting in the destruction of its property."

■ Civil actions under RICO are not limited to situations in which there is a tie to organized crime, *United States v. Turkette,* 452 U.S. 576, 590–91, 101 S.Ct. 2524, 2532–33, 69 L.Ed.2d 246 (1981); *Gilbert v. Prudential Bache Securities Inc.,* 769 F.2d 940 (3d Cir.1985). Rather, RICO also applies to legitimate businesses, and extends to remedying commercial and other fraud, and was indeed enacted with an awareness that it created a remedy in a field traditionally occupied by common law fraud. *See* Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg,* 58 Notre Dame L.Rev. 237, 280 (1980) in which Professor Blakely reviewed the legislative history of S.30 and Title IX, which is reprinted in *Measures Relating to Organized Crime: Hearings on S.30, S.994 ... Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary,* 91st Cong, 1st Sess. 61–62 (1969).

> While recognizing the concern over "civil RICO's increasing use in attempts to reach 'garden variety business fraud.' The Third Circuit has stated that [t]he desire to limit the range of the statute, however, must be tempered by the insight that in some instances business-related fraud can constitute a pattern of racketeering activity under RICO."

*Barticheck v. Fidelity Union Bank/First National State, et al.,* 832 F.3d 36, 40 (3d Cir.1987). *See also Moravian Development Corp. v. Dow Chemical Co.,* 651 F.Supp. 144, 146 (E.D.Pa.1986) in which the court stated that "nothing in the statute limits its application to organized crime or to a particular cause of action. 18 U.S.C. § 1961; *Sedima* [*supra*].... Moreover, plaintiff may not succeed on its RICO claim unless it proves its underlying allegation of fraud. Thus, the complaint goes beyond the limits of a traditional product liability case." Such is the case presently before me.

■ To state a claim under civil RICO, plaintiffs must allege that defendants are (1) conducting (2) an enterprise[5] (3)

---

**5.** An enterprise may play four roles: perpetrator, victim, instrument and prize. *See e.g. Rose,* 871 F.2d at 358; *United States v. Provenzano,* 688 F.2d 194 (3d Cir.) *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982). Indeed a plaintiff may be a member or a part of an enterprise. *See United Energy Owners v. United States Energy Management,* 837 F.2d 356, 362–63 (9th Cir.1988); *Temple University v. Salla Bros., Inc.,* 656 F.Supp. 97 (E.D.Pa.1986).

To establish the existence of a RICO enterprise, plaintiff must prove (1) there is an ongoing organization, which has a structure or framework for making decisions and a mechanism to control the affairs of the group on an ongoing basis; (2) that the various associates function as a continuing unit, that is that each individual component perform a role consistent within the organized structure, which furthers the activities of the organization; and (3) that the enterprise is separate and distinct from but not necessarily wholly unrelated to, the pattern of activity in which it engages, but has an existence beyond that which is necessary to merely commit each of the acts charged as predicate offenses. *Riccobene, supra* at 221–22. These elements are what a plaintiff must prove, not what must be pleaded. *See Seville, supra* at 790.

I note here as well that to state a claim for violation of 18 U.S.C. § 1962(c), plaintiffs can-

through a pattern[6] (4) of racketeering activity (5) that has caused injury to plaintiff's business or property. *Sedima, SPRL v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Keystone Insurance Co., supra* at 1128, *citing Marshall–Silver Construction Co. v. Mendel,* 835 F.2d 63, 65 (3d Cir.1987). *See also Saporito v. Combustion Engineering Inc.,* 843 F.2d 666, 673 (3d Cir.1988). All elements of a RICO claim must be plead in accordance with the liberal notice provisions of Fed.R.Civ.P. 8. *See Seville, supra* at 790. Under Rule 8:

A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief and (3) a demand for judgment for relief the pleader seeks. Relief in

the alternative or of several different types is allowed.

Rule 8(e)(1) further provides that:

Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading ... are required.

The limited requirements for pleadings made under Federal Rules of Civil Procedure reflects the view that the function of federal pleadings is to provide ones' adversary with notice of the occurrence sued upon and that the pleader has a claim upon which he is entitled to relief. *Rose, supra* at 355. A. Wright & C. Miller, Federal Practice & Procedure, § 1202 at 63. In their treatise, these authors specifically observed that:

pleadings under the rule may simply be a general summary of the parties' position that is sufficient to advise the other party of the event being sued upon ... No more is demanded of the pleading than this.

*Id.* at 358–59. Hence, all that the federal rule requires is that the complaint give

---

not allege that the defendant and enterprise are identical because Congress enacted § 1962(c) to punish the infiltrating wrongdoers rather than the legitimate corporations which might be the innocent victim victimized by RICO persons. *Rose, supra* 871 F.2d at 358–59; *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984). However, under 1962(a) plaintiffs may allege that the defendant and enterprise are the same.

**6.** Pattern refers to two acts of racketeering activity that are similar and reflect a related purpose, method of commission, results, participants and victims and continuity over time, as inferred from its nature and purpose and the enterprise itself. *See, Rose, supra* at 363–64, *citing United States v. Grayson,* 795 F.2d 278, 290 (3d Cir.1986) (*quoting Sedima, supra* at 496 n. 14, 105 S.Ct. at 3285 n. 14.)

A single illegal scheme can constitute a pattern of racketeering activity so long as the racketeering acts meet the "continuity plus relationship requirement," that distinguishes a RICO pattern from a series of isolated events that occur close in time. *See Rose, supra* at ——; *United States v. Zauber,* 857 F.2d 137 (3d Cir. 1988). The existence of such continuity is determined upon consideration of the following factors:

number of unlawful acts, length of time over which the acts were committed, the similarity of the acts, the number of victims, the num-

ber of perpetrators, and the character of the unlawful activity. *Barticheck v. Fidelity Union Bank,* 832 F.2d 36, 39 (3d Cir.1987).

*See also, Rose supra* at 363–65. Upon review of the Third Circuit's federal RICO "pattern" jurisprudence, as set forth in *Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052 (3d Cir.1988); *Saporito,* 843 F.2d 666; *Marshall–Silver, supra,* and *Barticheck, supra* I stated in my opinion in *Shulton, Inc. v. Associated Marketing Systems Inc., et al.,* No. 87–3412 slip op. at 3, 1988 WL 156774 (D.N.J. filed August 18, 1988) (unpublished), that:

The essence of the Third Circuit's test for pattern is a case-by-case analysis, taking into consideration the number of unlawful acts, the length of time covered by the acts, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity; all with the purpose of discerning whether there is 'criminal activity that, because of its organization, duration and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time." *Marshall–Silver,* 835 F.2d at 66–67. Crucial to my view of Third Circuit 'pattern' law is the notion that the case-by-case enumeration of factors is not a mechanical exercise, but rather is done to illuminate whether the case at hand presents the essential RICO threat of a series of [wrongful acts] over time.

*See also Rose, supra* at 363–65.

defendants "fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra* 355 U.S. at 48, 78 S.Ct. at 103; *United States v. City of Philadelphia,* 644 F.2d 187, 204 (3d Cir. 1980); *Universe Tankships, Inc. v. United States,* 528 F.2d 73, 75–76 (3d Cir.1975). *See also Seville, supra* at 790 in which the court recognized that:

> the Federal Rules of Civil Procedure were designed to eliminate the vagaries of technical pleading that once plagued complainants, and to replace them with the considerably more liberal requirements of so-called 'notice pleading.' Under the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action.

(citation omitted). Applying this analysis the appellate court in *Seville* held that since the proof standard is inapplicable to test the sufficiency of pleading in a RICO case, the rules of pleading require, for example, only that plaintiff identify the entities it believes to be enterprises, and allege their existence without anything more. *Id.* at 790.

■ Applying this standard to the case at bar, it is clear that plaintiffs *allege* and identify various *enterprises* who have conducted activities that have caused plaintiffs' injury. Similarily, as plaintiffs have alleged that defendants conducted the enterprise through a pattern of racketeering activity, they have properly plead another element of their claim. *Sedima, supra* 473 U.S. at 500, 105 S.Ct. at 3287, *United Energy, supra* at 362.[7] As plaintiffs have satisfied the requirements of Rule 8, their pleadings, in this regard, are sufficient.

In *Barticheck, supra,* at 38–39, the Court of Appeals for the Third Circuit reviewed the standard under which a plaintiff must allege a "pattern of racketeering activity." Specifically, to plead the existence of such a pattern the allegations must reveal the existence of two or more racketeering acts that are related and are apparently continuous, as reflected from the combination circumstances plead in the complaint with respect to the number of unlawful acts committed, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of unlawful activity. Applying this standard to the pleading at issue it is clear that plaintiffs alleged a pattern since the nature of the scheme alleged involves assertions that defendants engaged in more than two acts of fraudulent conduct as can be inferred from the nature of the ostensibily repeated acts of fraud plead, which were allegedly carried out by various corporate entities. Thus, as the complaint alleges a pattern of racketeering activity in conformance with the standard set forth in *Barticheck* and the dictates of Rule 8, I find that plaintiffs' claim in this regard has also been sufficiently pled.

With respect to the racketeering activity in which defendants purportedly engaged, plaintiffs allege that they have suffered, *inter alia,* economic loss as a result of their purchase of certain products in reliance on certain misrepresentations of the defendants. Plaintiffs contend that defendants made these misrepresentations through the use of the mails and hence have violated 18 U.S.C. § 1341. Plaintiffs contend that each such use of the mails constitute a predicate act of racketeering as defined in 18 U.S.C. § 1961(1). Because these predicate acts are acts of fraud, they must be pleaded with particularity under Fed.R.Civ.P. 9(b). *Saporito, supra* at 673; *Rose, supra* at 356 n. 33.

Fed.R.Civ.P. 9(b) states "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." The Court of Appeals for the Third Circuit has recognized that "in applying Rule 9(b), focusing exclusively on its particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Seville, supra* at 791

---

7. As the Court recognized in *Seville,* plaintiffs need not plead the *Riccobene* elements or specifically allege how defendants conducted the affairs of the enterprise.

(quotation marks and citations omitted). Continuing, the court stated that:

> Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations.

*Id.* In *Seville*, the plaintiffs satisfied Rule 9(b) by incorporating into the complaint a list that identified the pieces of machinery which were the subject of the alleged fraud. Moreover, in that case the complaint set forth the nature of the alleged misrepresentation. Although the complaint did not set forth or describe the precise words used, the court found that the complaint adequately described the nature and subject of the alleged misrepresentation. Thus, even absent allegations with respect to the exact factual context or words constituting the misrepresentation, a description of the nature and subject of the representation is sufficient. *See Kronfeld v. First Jersey Nat'l Bank,* 638 F.Supp. 1454, 1464 (D.N.J.1986). *See also, Saporito, supra* at 675–76 in which the court noted that the pleading requirement of Rule 9(b) "simply mandates that the actions establishing the fraud be pleaded with greater particularity than other pleadings" and under this standard requires that plaintiffs plead who made the representations to whom and the general content of the representations.

With these standards in mind I shall now evaluate the proposed amended complaint to determine whether plaintiffs have alleged the fraud-based RICO offenses with sufficient particularity to comply Rule 9(b). Plaintiffs' allegations of fraud appear both in their factual allegations in support of their common law cause of action for fraud, *see* ¶¶ 77–77 of plaintiffs' Proposed Amended Complaint as well as in the alle-

gations related to their claims under Civil RICO, at ¶¶ 108–132 of plaintiffs' Proposed Amended Complaint. Those portions, read together, set forth the content of the representations, the proponents' as well as the recipients' representations. Specifically, plaintiffs allege that from the 1950's through the 1980's defendants made representations in advertisements, sales literature, and trade publications that the asbestos-containing products were safe, nontoxic, fully tested, suitable for use in commercial buildings and desirable. *See* Proposed Amended Complaint at ¶¶ 73–74, 114–16, 122. Plaintiffs further allege that defendants made these representations, despite their knowledge of the falsity, and having fraudulently concealed the truth about the dangerous nature of the product, with an intent to induce purchasers to buy the product, *see id.* at ¶¶ 73, 114–15, 117–18, 120–21 and that plaintiffs indeed relied on the representations, *see id.* at ¶¶ 75, 108, 129, and were damaged by these representations. Thus, as plaintiffs have articulated the circumstances of the alleged fraud and have thereby placed defendants on notice of the fraudulent conduct charged by setting forth the products about which the fraudulent representations were made, the nature and context of the misrepresentations, and the proponents of the misrepresentations, plaintiffs have plead their fraud claims with the level of particularity required in this circuit.

Therefore, as plaintiffs have presented a properly pleaded Civil RICO claim, I shall grant their motion for leave to amend their complaint to state this claim.

 With respect to plaintiffs' request to amend the pleadings to assert alternate theories of collective liability, I first note that pursuant to Rule 8(e):

> A party may set forth two or more statements of a claim.... alternately.... A party may also state as many separate claims ... as the party has regardless of consistency....

Thus, a plaintiff may set forth inconsistent legal theories in his pleading and will not be forced to select a single theory on which

to seek recovery. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1283 at 373. For this reason it is not improper to assert some bases which specifically presume the ability to identify the wrongdoer, such as in a claim for breach of warranty, while simultaneously asserting bases for relief which include an element that plaintiff is unable to identify the tort feasor, which is the case under some collective liability theories. Hence, the inconsistency of such simultaneously asserted claims is not a basis upon which plaintiffs should be denied leave to amend their complaint to state such claims.

Moreover, the viability of the collective theories of liability under the law of the state of New Jersey is currently under consideration before the Supreme Court of the State of New Jersey. *See Shackil v. Lederle Laboratories*, 219 N.J.Super. 601, 530 A.2d 1287 (App.Div.), *certif. granted*, 109 N.J. 519, 520, 537 A.2d 1304 (1987). As such, I will allow plaintiffs leave to amend their complaint to assert such claims at this time without deciding whether or not same are viable. The area of law is developing, and therefore this is not the propitious time to evaluate the merits of the claim. As the law becomes more definitive, the parties may bring an appropriate motion if they so desire at that time.

Finally, as defendants have not opposed any other aspects of plaintiffs' proposed amended complaint, I presume those aspects are unopposed and I shall grant plaintiffs leave to file same.

Before concluding I wish to point out that my decision to allow plaintiffs' leave to file an amended complaint in no way reflects an evaluation of the merits of any of their claims in this case. When confronted with any possible motions for summary judgment under Fed.R.Civ.P. 56, as well as the time of trial, plaintiffs would face the burdens of production and proof regarding the various elements of their claims. At these later stages, plaintiffs may or may not succeed in marshalling the evidence necessary to press its claim. I make this point merely to emphasize what I have not decided in the context of this motion.

Hence, for all of the above reasons, the motions of defendants United States Gypsum, W.R. Grace, Celotex, Keene, Asbestos–Spray and United States Mineral and National Gypsum to dismiss plaintiffs' CERCLA claim are hereby granted, plaintiffs' motion to strike defendants' affirmative defenses regarding the inapplicability of CERCLA to this case and motion for a declaratory judgment that CERCLA applies to this case are hereby denied, plaintiffs' motions to consolidate and to dismiss defendant Pfizer have been rendered moot, and plaintiffs' motion for leave to file an amended complaint is hereby granted.

The Court has filed an order in conformance with this opinion with the Clerk of the Court.